TYSON, Judge.
 

 *464
 
 Respondent-mother appeals from an order terminating her parental rights to her minor daughters, C.N. ("Carrie") and A.N. ("Anne").
 
 See
 
 N.C. R. App. P. 42(b) (pseudonyms are used to protect the identity of the juveniles). The order also terminates the parental rights of the legal father of A.N. and putative father of C.N. and the unknown father of C.N. No father is a party to this appeal. We reverse the trial court's order as it relates to Respondent-mother.
 

 I. Background
 

 On or about 28 June 2016, EMS and law enforcement responded to a 911 call regarding a child who had suffered chemical burns. Carrie was treated for corneal abrasions and chemical burns on her tongue in the New Hanover Regional Medical Center Emergency Department and was kept overnight for observation.
 

 Respondent-mother reported Carrie had pulled up on a table and spilled an open
 
 *880
 
 bottle of Mr. Clean liquid detergent onto herself. EMS and law enforcement who responded to the 911 call reported that conditions inside the home were dirty and in poor shape. Needles were found inside the home. Respondent-mother admitted to using marijuana within the previous week and had reported past incidents of domestic violence. Concerns were also expressed about Respondent-mother's mental health.
 

 Prior to the this incident, the New Hanover County Department of Social Services ("DSS") had received a report in May 2016 that Anne was found wandering alone behind a Roses retail store off of Carolina Beach Road. DSS obtained nonsecure custody of eleven-month-old Carrie and two-year-old Anne and filed a juvenile petition alleging they were neglected juveniles. Nonsecure custody with DSS was continued and the juveniles were placed with Respondent-mother's sister.
 

 Respondent-mother stipulated at the adjudication hearing to the allegations in the juvenile petition that Carrie and Anne were neglected, as they did not receive proper care, supervision or discipline and lived in an environment injurious to their welfare.
 

 The trial court adjudicated Carrie and Anne to be neglected juveniles based upon Respondent-mother's stipulation. The trial court determined their best interests were served for legal custody and placement authority to remain with DSS and to continue their placement in the Respondent-mother's sister's home.
 

 The trial court also adopted the recommendations of DSS and the guardian
 
 ad litem
 
 ("GAL") for Respondent-mother's case plan and ordered
 
 *465
 
 Respondent-mother to: (1) obtain and maintain stable income; (2) obtain and maintain stable housing; (3) complete a mental health assessment; (4) comply with all recommendations; (5) sign releases for DSS and GAL; (6) submit to random drug screens; (7) successfully complete substance abuse treatment; and (8) successfully complete parenting classes. Respondent-mother was scheduled for weekly supervised visitation.
 

 A permanency planning hearing was held on 3 May 2017, after which the trial court entered its order on 23 June 2017. DSS asserted Respondent-mother was "not actively participating in her treatment plan," had not obtained stable housing, and had not shown up for the majority of the requested drug screens. Respondent-mother responded that she had completed her comprehensive clinical assessment ("CCA") and parenting classes, but had difficulties with a cell phone. The trial court changed the primary permanent plan for Carrie and Anne from reunification to legal guardianship with Respondent-mother's sister with a concurrent plan of reunification.
 

 Another permanency planning hearing was held on 26 September 2017, after which the trial court entered an order on 13 November 2017, followed by an amended permanency planning order on 16 January 2018. The trial court found that the juveniles were "currently placed in foster care after their kinship placement with [their] maternal aunt [was] disrupted[,]" and that "Respondent-[m]other is not actively participating in her treatment plan[,]" "has not consistently engaged in services[,]" and "does not show up for the majority of the requested drug screens." The order reflects Respondent-mother had submitted proof of employment, secured housing, and asserted that transportation was an issue and requested bus passes.
 

 The trial court ordered DSS to provide bus passes to Respondent-mother and ordered a home study on Respondent-mother's home. The court changed the primary permanent plan for Carrie and Anne to adoption with a concurrent plan for reunification.
 

 On 8 February 2018, DSS filed a petition to terminate Respondent-mother's and the putative fathers' parental rights to Carrie and Anne. DSS alleged the following grounds for termination of Respondent-mother's parental rights: neglect and willful failure to make reasonable progress.
 
 See
 
 N.C. Gen. Stat. § 7B-1111(a)(1)-(2) (Supp. 2018). The petition was heard on 23 and 26 April 2018.
 

 The trial court found grounds of neglect and willful failure to make reasonable progress existed to terminate Respondent-mother's parental
 
 *466
 
 rights. The trial court concluded
 
 *881
 
 Carrie and Anne's best interests required termination of Respondent-mother's parental rights in an order entered 3 July 2018.
 
 See
 
 N.C. Gen. Stat. § 7B-1110(a) (2017). The fathers are not parties to this appeal. The trial court's order is final concerning termination of the fathers' parental rights. Respondent-mother timely appealed. DSS filed no response or brief to Respondent-mother's appeal.
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court from a final order of the district court entered 3 July 2018 pursuant to N.C. Gen. Stat. § 7B-1001(a)(6) (2017).
 

 III. Issues
 

 Respondent-mother argues the trial court erred by finding and concluding the grounds of neglect and willful failure to make reasonable progress existed to terminate her parental rights.
 

 IV. Standard of Review
 

 "This Court reviews a trial court's conclusion that grounds exist to terminate parental rights to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law."
 
 In re A.B.
 
 ,
 
 239 N.C. App. 157
 
 , 160,
 
 768 S.E.2d 573
 
 , 575 (2015). "We review conclusions of law
 
 de novo
 
 ."
 
 In re B.S.O.
 
 ,
 
 234 N.C. App. 706
 
 , 708,
 
 760 S.E.2d 59
 
 , 62 (2014).
 

 V. Analysis
 

 A.
 
 Neglect
 

 A neglected juvenile is one whose parent does not "provide proper care, supervision, or discipline ... or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101 (15) (Supp. 2018).
 

 A parent has neglected a juvenile if the court finds the juvenile to be neglected within the meaning of N.C. Gen. Stat. § 7B-101. N.C. Gen. Stat. § 7B-1111(a)(1). "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding."
 
 In re Young
 
 ,
 
 346 N.C. 244
 
 , 248,
 
 485 S.E.2d 612
 
 , 615 (1997) (citation omitted).
 

 Respondent-mother argues the trial court erred by finding and concluding that the ground of neglect under N.C. Gen. Stat. § 7B-1111(a)(1) existed to terminate her parental rights to Carrie and Anne. Where,
 
 *467
 
 as here, the juvenile has been removed from the parent's custody, "[t]he trial court must also consider
 
 any evidence of changed conditions
 
 in light of the evidence of prior neglect
 
 and the probability of a repetition of neglect
 
 ."
 
 In re Ballard
 
 ,
 
 311 N.C. 708
 
 , 715,
 
 319 S.E.2d 227
 
 , 232 (1984) (citation omitted) (emphasis supplied).
 
 See also
 

 In re M.J.S.M.
 
 , --- N.C. App. ----, ----,
 
 810 S.E.2d 370
 
 , 373 (2018) ("where there is no evidence of neglect at the time of the termination proceeding ... parental rights may nonetheless be terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to [his or] her parents." (citation omitted)).
 

 With respect to Respondent-mother, the trial court made the following findings of fact:
 

 3. ... Both children have been in the legal custody of [DSS] since June 28, 2016, were residing in a kinship placement with a maternal aunt and have currently been residing with licensed foster parents since being placed in an out of home placement.
 

 ....
 

 10. That [Carrie] and [Anne] were adjudicated neglected Juveniles within the meaning of G.S. 7B-101(15) at a hearing held on August 24, 2016 where Respondent-Parents stipulated to the allegations in the petition. Respondent-Mother was ordered to comply with her Case Plan; obtain and maintain stable income and housing; submit to a substance abuse assessment and to comply with all recommendations; complete a mental health assessment and comply with all recommendations; successfully complete parenting classes; and participate in random drug screens. ...
 

 11. That from June 2016 through February 2018 Respondent-Mother demonstrated a
 
 *882
 
 pattern of instability in housing and income. She has lived with several different boyfriends within New Hanover and Bladen County and earns income by cleaning houses and selling things on eBay. For the past year, Respondent-Mother has primarily resided with a boyfriend in Carolina Beach. She is financially dependent on her boyfriend for transportation, income and housing. Respondent-Mother has been inconsistent with her communication with [DSS], has
 
 *468
 
 not provided a current, working telephone number, has not provided an email address, does not return phone calls, has missed appointments and was not engaged when she did attend. [DSS] has provided her with bus passes and offered individual transportation. Respondent-Mother completed her substance abuse assessment but not the recommended treatment consisting of intensive out-patient, community support, 12 step program, individual therapy, skill set, SAIOP, after care and relapse prevention. Respondent-Mother started to participate in her treatment plan then elected to detox at home in August 2016. She disengaged with services, moved from her service area, and then sporadically re-engaged with services in early 2018. She accessed mental health treatment in August 2017 and out-patient therapy was recommended to help her cope with her depressive order, ADHD, alcohol and Opioid use. Respondent-Mother self-reports that she "has so much going on", that she has depression and runs from or ignores her problems, copes with it by sleeping for days and not eating. She stopped attending classes at Coastal Horizons because she "thought they were a joke" and would have enrolled in substance abuse treatment if she thought it was important. Respondent-Mother completed her parenting classes and participated in 13 out of 38 drug screen requests with mixed negative and positive results for benzodiazepines and amphetamines. During a home visit, Respondent-Mother was unable to account for her missing medication and thought she may have taken extra. Respondent-Mother had multiple phone issues during the underlying matter. Her boyfriend pays for her phone and has taken it from her when she texted someone else. Respondent-Mother and her boyfriend have broken up a few times over the past year when she texts other people. To date, Respondent-Mother has not been consistent with any treatment, is not compliant with her case plan and re-engaged in some services at lunch time on the first day of this hearing.
 

 ....
 

 15. .... Respondent-Mother was late to visits in November 2017 and December 2017 and did not notify anyone when she did not attend visits in August 2017, September
 
 *469
 
 2017, January 2018, and March 2018. When visits with Respondent-Mother occurred, she would bring snacks and gifts for the children and interact appropriately with the children.
 

 Based upon these findings, the trial court concluded that Respondent-mother had "neglected the children, that the neglect is ongoing, and that there is a probability of repetition of neglect."
 

 "Our courts cannot presume a parent to be unfit or to have acted inconsistently with his constitutional rights as a parent without clear, cogent, and convincing evidence to demonstrate why the parent cannot care for his child."
 
 In re S.J.T.H.
 
 , --- N.C. App. ----, ----,
 
 811 S.E.2d 723
 
 , 725 (2018) (citations omitted). DSS must overcome this presumption of parental fitness and meet and carry its burden of proof by clear, cogent and convincing evidence to show grounds exist to terminate parental rights.
 

 Id.
 

 A parent's failure to make reasonable progress in completing a case plan may indicate a likelihood of future neglect.
 
 In re D.M.W.
 
 ,
 
 173 N.C. App. 679
 
 , 688-89,
 
 619 S.E.2d 910
 
 , 917 (2005),
 
 rev'd per curiam per the dissent,
 

 360 N.C. 583
 
 ,
 
 635 S.E.2d 50
 
 (2006). Failure to make progress must be viewed by the actions and attempts of parents within their abilities and means, considering their resources or lack thereof and the priority for their securing their basic necessities of life.
 
 See
 
 N.C. Gen. Stat. § 7B-1111(a)(2) ("No parental rights, however, shall be terminated for the sole reason that
 
 *883
 
 the parents are unable to care for the juvenile on account of their poverty.").
 

 Here, the juveniles were removed from Respondent-mother's care after the youngest child spilled Mr. Clean onto herself and Respondent-mother called for medical assistance. No evidence shows and the trial court made no findings indicating such actions were likely to be repeated. As progress on her case plan, to become a better parent, and to reduce or remove the likelihood of future neglect, Respondent-mother had completed parenting class, completed a CCA, had re-engaged in treatment, was employed, had recently submitted to drug testing and had obtained stable housing and transportation. The social worker testified Respondent-mother's recent drug test results were inconclusive and DSS was awaiting new results at the time of the hearing.
 

 The evidence presented and the trial court's findings are insufficient to support the conclusion that "neglect is ongoing, and there is a probability of repetition of neglect." We reverse the conclusion that Respondent-mother's neglect is ongoing and the probability exists of her
 
 *470
 
 future neglect of her daughters.
 
 See
 

 In re Ballard
 
 ,
 
 311 N.C. at 715
 
 ,
 
 319 S.E.2d at 232
 
 .
 

 B. Failure to Make Reasonable Progress
 

 Respondent-mother argues the trial court erred in concluding grounds for termination of her parental rights existed "[b]ecause [she had] made reasonable efforts and progress in addressing the conditions that led to her children's removal."
 

 The trial court may terminate parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2).
 

 "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort."
 
 In re McMillon
 
 ,
 
 143 N.C. App. 402
 
 , 410,
 
 546 S.E.2d 169
 
 , 175,
 
 disc. review denied
 
 ,
 
 354 N.C. 218
 
 ,
 
 554 S.E.2d 341
 
 (2001). "A finding of willfulness does not require a showing of fault by the parent."
 
 In re Oghenekevebe
 
 ,
 
 123 N.C. App. 434
 
 , 439,
 
 473 S.E.2d 393
 
 , 398 (1996) (citation omitted).
 

 The undisputed evidence shows Respondent-mother completed a CCA in January 2017. The CCA recommended substance abuse treatment and individual therapy sessions to address her mental health. Respondent-mother sought mental health services beginning in August 2017. Evidence was presented that from then until February 2018, Respondent-mother presented to and attended nine sessions for therapy and five appointments for medication management. She missed 10 scheduled sessions during the same time frame. Following a break from therapy after one session in February 2018, Respondent-mother attended one additional therapy session at the end of March 2018. The trial court found Respondent-mother had ceased attending sessions because "she 'thought they were a joke' and [she] would have enrolled in substance abuse treatment if she thought it was important."
 

 While evidence tending to show missed therapy sessions may support the trial court's finding that her attendance at treatment was inconsistent, a parent's inconsistent attendance at therapy sessions does not alone show a lack of reasonable progress, particularly when a parent is working or seeking to comply with other provisions of her plan to meet her and her children's needs. "While extremely limited progress is not reasonable progress, certainly perfection is not required to reach the
 
 *471
 
 reasonable standard."
 
 In re S.D.,
 

 243 N.C. App. 65
 
 , 73,
 
 776 S.E.2d 862
 
 , 867 (2015) (citations and quotations omitted).
 

 Respondent-mother argues the trial court's findings are misleading and do not reflect evidence of her progress and situation at the time of the hearing. Respondent-mother points to undisputed evidence of her activities and accomplishments to show reasonable progress in her case plan: (1) she re-enrolled in substance abuse treatment; (2) she continued therapy; (3) she was taking medications to address her mental health issues; (4) she had fully completed a parenting class; (5) she
 
 *884
 
 had improved her housing; (6) she was employed; (7) she had improved transportation; and (8) she had maintained better contact with DSS.
 

 Respondent-mother also specifically challenges the portion of finding of fact number eleven, which states she "has not provided an email address." Testimony at the termination hearing tended to show DSS did not have a valid telephone number for Respondent-mother, and had recently resorted to email to communicate with Respondent-mother when they were unable to reach her by telephone. Evidence shows Respondent-mother had, in fact, provided an email address to DSS to remain in contact with her social worker as directed by her case plan.
 

 When the evidence and the trial court's findings are viewed against the parental presumption favorable to Respondent-mother, DSS has failed to meet its burden to prove she had failed to make reasonable progress to support the conclusion to terminate her parental rights on this ground.
 

 Respondent-mother's efforts and the facts before us sharply contrast to those where this Court has held that "[e]xtremely limited progress is not reasonable progress."
 
 See
 

 In re Nolen
 
 , 117 N.C. App. at 700, 453 S.E.2d at 224-25 ;
 
 see also
 

 In re Bishop
 
 ,
 
 92 N.C. App. 662
 
 , 670,
 
 375 S.E.2d 676
 
 , 681 (1989) (upholding termination of parental rights where, "although respondent has made some progress in the areas of job and parenting skills, such progress has been extremely limited").
 

 DSS recognized Respondent-mother had engaged with service providers and that her substance abuse recommendations were intertwined with her mental health treatment. While Respondent-mother had completed her substance abuse assessment, the social worker opined Respondent-mother's progress was minimal and she was not participating "with any real consistency that you could make some change."
 

 Other areas of progress in Respondent-mother's case plan, such as stable housing and transportation were partly attributable to Respondent-mother's relationship with a new boyfriend, upon whom
 
 *472
 
 she was financially dependent. Respondent-mother's case plan does not and cannot require that she alone be responsible for providing her housing and transportation. Evidence in the record also shows Respondent-mother was employed at the time of the hearing. Respondent-mother also engaged in appropriate visits with her daughters.
 

 N.C. Gen Stat. § 7B-904 provides that a court may order a parent to "[t]ake appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent." N.C. Gen. Stat. § 7B-904(d1)(3) (2017). In the case of
 
 In re W.V.
 
 ,
 
 204 N.C. App. 290
 
 , 297,
 
 693 S.E.2d 383
 
 , 388-89 (2010), this Court vacated the trial court's order requiring the respondent to obtain housing or employment where those requirements were unrelated to the causes of the conditions in the home which contributed to the juvenile's adjudication or the court's decision to remove the juvenile from the home.
 

 Id.
 

 Nothing in the record suggests or supports the finding that the Respondent-mother's dependence on her present boyfriend for housing, transportation, and for providing her a cell phone bears any relation to the causes of the conditions of the removal of Carrie and Anne from their mother's home.
 
 See
 
 id.
 

 The trial court found Respondent-mother had not been consistent in her treatment, was not fully compliant with her case plan, and had only recently re-engaged in some services. These findings do not support the trial court's conclusion that Respondent-mother had not made reasonable progress in her case plan to address the reasons that led to the removal of her children, or that her failure to make reasonable progress was willful to support termination of her parental rights to both of her daughters.
 
 See
 

 In re O.C.
 
 ,
 
 171 N.C. App. 457
 
 , 464-65,
 
 615 S.E.2d 391
 
 , 396 (2005) (trial court must determine by clear, cogent and convincing evidence that a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and, further, that as of the time of the hearing, as demonstrated by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions
 
 *885
 
 which led to the removal of the child.) and
 
 In re McMillon,
 

 143 N.C. App. 402
 
 , 410,
 
 546 S.E.2d 169
 
 , 175 (2001) ("Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." (citation omitted)).
 

 VI. Conclusion
 

 The public policy of North Carolina, as is statutorily expressed by the General Assembly, mandates every court-ordered plan to include a
 
 *473
 
 concurrent goal of reunification of children with their parent(s). N.C. Gen. Stat. § 7B-906.2 (2017). This policy necessarily requires that DSS's relationships and dealings with the parent(s) must continue as cooperative, rather than adversarial, until termination of the parent's rights by the court and through exhaustion of appeals.
 

 Id.
 

 The trial court's adjudication of the evidence and findings of fact fail to support the conclusions that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(1) or (a)(2) to terminate Respondent-mother's parental rights. We reverse the trial court's termination of Respondent-mother's parental rights to Carrie and Anne.
 
 It is so ordered.
 

 REVERSED.
 

 Judges DILLON and BERGER concur.