IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1031-2

Filed: 21 April 2020

New Hanover County, No. 16 JT 174-75

IN THE MATTER OF C.N., A.N.

Appeal by respondent from order entered 3 July 2018 by Judge J. H. Corpening II in New Hanover County District Court.  This case was originally heard in the Court of Appeals 27 June 2019. *In re C.N., A.N.*, ___ N.C. App. ___, 831 S.E.2d 878 (2019). Upon remand from the Supreme Court of North Carolina.

*No brief filed for petitioner-appellee New Hanover County Department of Social Services.*

*Mary McCullers Reece for respondent-appellant mother.*

*Womble Bond Dickinson (US) LLP, by Jessica Gorczynski, for guardian ad litem.*

TYSON, Judge.

The Supreme Court of North Carolina remanded this case for this Court "to reconsider its holding in light of *In re B.O.A.,* 372 N.C. 372, 831 S.E.2d 305 (2019) and *In re D.W.P. and B.A.L.P.,* ___ N.C. ___, ___ S.E.2d. ___ (2020)."  We have reviewed both decisions as analyzed herein, and hold these opinions, together or individually, do not change or affect this Court's the earlier mandate.

I. Factual and Procedural Background

The facts underlying the petition and adjudication to terminate Respondent-mother's parental rights are fully set forth in this Court's opinion in *In re C.N., A.N.*, ___ N.C. App. ___, 831 S.E.2d 878 (2019). The pertinent facts and procedural background are set out below.

During May 2016, the New Hanover County Department of Social Services ("DSS") received a report that Respondent-mother's minor daughter "Anne" was found wandering alone behind a store on Carolina Beach Road in New Hanover County. *See* N.C. R. App. P. 42(b) (pseudonyms are used to protect the identity of the juveniles).

On or about 28 June 2016, Respondent-mother called 911. Respondent-mother reported her other minor daughter, "Carrie," had pulled up on a table and spilled an open bottle of Mr. Clean liquid detergent onto herself. EMS and law enforcement, who responded to the 911 call, reported conditions inside the home were dirty and in poor shape. Carrie was treated for corneal abrasions and chemical burns on her tongue.

DSS obtained nonsecure custody of eleven-month-old Carrie and two-year-old Anne and filed a juvenile petition alleging they were neglected juveniles. Respondent-mother stipulated to the allegations that Carrie and Anne were neglected, on the basis they did not receive proper care, supervision, or discipline, and lived in an environment injurious to their welfare, in the juvenile petition at the

adjudication hearing. The trial court adjudicated Carrie and Anne to be neglected juveniles based upon Respondent-mother's stipulation.

On 8 February 2018, DSS filed a petition to terminate Respondent-mother's parental rights to Carrie and Anne. DSS alleged the following grounds for termination of Respondent-mother's parental rights: neglect and willful failure to make reasonable progress. The petition was heard on 23 and 26 April 2018.

The trial court made the following findings of fact:

> 3. . . . Both children have been in the legal custody of [DSS] since June 28, 2016, were residing in a kinship placement with a maternal aunt and have currently been residing with licensed foster parents since being placed in an out of home placement.
>
> . . . .
>
> 10. That [Carrie] and [Anne] were adjudicated neglected Juveniles within the meaning of G.S. 7B-101(15) at a hearing held on August 24, 2016 where Respondent-Parents stipulated to the allegations in the petition. Respondent-Mother was ordered to comply with her Case Plan; obtain and maintain stable income and housing; submit to a substance abuse assessment and to comply with all recommendations; complete a mental health assessment and comply with all recommendations; successfully complete parenting classes; and participate in random drug screens. . . .
>
> 11. That from June 2016 through February 2018 Respondent-Mother demonstrated a pattern of instability in housing and income. She has lived with several different boyfriends within New Hanover and Bladen County and earns income by cleaning houses and selling things on eBay. For the past year, Respondent-Mother has primarily

resided with a boyfriend in Carolina Beach. She is financially dependent on her boyfriend for transportation, income and housing. Respondent-Mother has been inconsistent with her communication with [DSS], has not provided a current, working telephone number, has not provided an email address, does not return phone calls, has missed appointments and was not engaged when she did attend. [DSS] has provided her with bus passes and offered individual transportation. Respondent-Mother completed her substance abuse assessment but not the recommended treatment consisting of intensive out-patient, community support, 12 step program, individual therapy, skill set, SAIOP, after care and relapse prevention. Respondent-Mother started to participate in her treatment plan then elected to detox at home in August 2016. She disengaged with services, moved from her service area, and then sporadically re-engaged with services in early 2018. She accessed mental health treatment in August 2017 and out-patient therapy was recommended to help her cope with her depressive order, ADHD, alcohol and Opioid use. Respondent-Mother self-reports that she "has so much going on", that she has depression and runs from or ignores her problems, copes with it by sleeping for days and not eating. She stopped attending classes at Coastal Horizons because she "thought they were a joke" and would have enrolled in substance abuse treatment if she thought it was important. Respondent-Mother completed her parenting classes and participated in 13 out of 38 drug screen requests with mixed negative and positive results for benzodiazepines and amphetamines. During a home visit, Respondent-Mother was unable to account for her missing medication and thought she may have taken extra. Respondent-Mother had multiple phone issues during the underlying matter. Her boyfriend pays for her phone and has taken it from her when she texted someone else. Respondent-Mother and her boyfriend have broken up a few times over the past year when she texts other people. To date, Respondent-Mother has not been consistent with any treatment, is not compliant with her case plan and re-engaged in some services at lunch time on the first day of

this hearing.

. . . .

15. . . . Respondent-Mother was late to visits in November 2017 and December 2017 and did not notify anyone when she did not attend visits in August 2017, September 2017, January 2018, and March 2018. When visits with Respondent-Mother occurred, she would bring snacks and gifts for the children and interact appropriately with the children.

The trial court found grounds of neglect and willful failure to make reasonable progress existed to terminate Respondent-mother's parental rights. The trial court concluded Carrie and Anne's best interests required termination of Respondent-mother's parental rights in an order entered 3 July 2018. Respondent-mother timely appealed.

When initially reviewed on appeal, this Court unanimously held the evidence presented and the trial court's findings were insufficient to support the conclusion that Respondent-mother's "neglect is ongoing, and there is a probability of repetition of neglect." We further concluded DSS' evidence failed to show Respondent-mother had failed to make reasonable progress to support the conclusion to terminate her parental rights on this ground.

## II. *In re B.O.A.*

In the case of *In re B.O.A.*, the Supreme Court of North Carolina held that the respondent-mother's parental rights were subject to termination on the ground that she had failed to make reasonable progress in correcting the conditions that led to

her daughter's removal from her home pursuant to N.C. Gen. Stat. §7B-1111(a)(2). *In re B.O.A.*, 372 N.C. at 373, 831 S.E.2d at 306.

In that case, "Bev" had been removed from her mother's home after local law enforcement had responded to the respondent-mother's call for assistance due to assaultive behavior by Bev's father and a "lengthy bruise" was discovered on Bev's arm. *Id.* at 373, 831 S.E.2d at 307. After a hearing, Bev was adjudicated neglected and the respondent-mother was required to comply with a case plan. *Id.* at 374, 831 S.E.2d at 307.

The case plan included requirements that respondent-mother: "obtain a mental health assessment; complete domestic violence counseling and avoid situations involving domestic violence; complete a parenting class and utilize the skills learned in the class during visits with the child; remain drug-free; submit to random drug screenings; participate in weekly substance abuse group therapy meetings; continue to attend medication management sessions; refrain from engaging in criminal activity; and maintain stable income for at least three months." *Id.* at 373-74, 831 S.E.2d 307.

Eventually, DSS petitioned to terminate the respondent-mother's parental rights. In the termination order, the trial court made findings, which included that the respondent-mother had not demonstrated the skills she was to learn in her domestic violence class. The trial court found "[i]n the last six months, [respondent-

mother] has called the police on her live-in boyfriend and father of her new born child," and that she had "not remained free of controlled substances, and has continued to test positive for controlled substances (even during her recent pregnancy)." *Id.* at 374-75, 831 S.E.2d 307. The trial court further found the respondent-mother had declined a visit with her child, was hostile towards her social worker, revoked her consent to allow DSS access to her mental health records, and told the trial court that she "could pass the Bar today." *Id.* at 375-76, 831 S.E.2d 308.

Here, the evidence and the findings support the conclusion that Respondent-mother made progress on her case plan. Respondent-mother's progress is in contrast the respondent-mother's behaviors and lack of progress in *In re B.O.A.* Further, our Supreme Court held in *In re B.O.A.* that this Court had adopted a restrictive construction of N.C. Gen. Stat. § 7B-1111(a)(2) in defining the conditions which led to a juvenile's removal. *Id.* at 385, 831 S.E.2d at 314.

In the present case, the panel of this Court reviewing the trial court's order properly reviewed the facts as found on the evidence presented and determined they were insufficient to support conclusions to satisfy the statutory definitions of neglect and failure to make reasonable progress to terminate Respondent-mother's parental rights. This Court's prior decision contained no "restricted" reading of the conditions which led to Carrie and Anne's removal. *Id.* The background, analysis, and conclusions in *In re B.O.A.* are distinct from and not controlling of the present case.

III. *In re D.W.P.*

This Court was also directed to review and reconsider our holding in light of *In re D.W.P.*, ___ N.C. ___, ___ S.E.2d ___, 2020 WL 967615 (2020). In this recent case, our Supreme Court affirmed the trial court's termination of a respondent-mother's parental rights based upon her lack of reasonable progress to remedy the conditions that led to the removal of her children. ___ N.C. at ___, ___ S.E.2d at ___, 2020 WL 967615, at *1.

In *In re D.W.P.*, our Supreme Court recognized that the trial court's order relied upon the following:

> past abuse and neglect; failure to provide a credible explanation for [the child's] injuries; respondent-mother's discontinuance of therapy; respondent-mother's failure to complete a psychiatric evaluation; respondent-mother's violation of the conditions of her probation; the home environment of domestic violence; respondent-mother's concealment of her marriage from GCDHHS; and respondent-mother's refusal to provide an explanation for or accept responsibility for [the child's] injuries.

___ N.C. at ___, ___ S.E.2d at ___, 2020 WL 967615, at *8.

The Supreme Court also recognized the respondent-mother had made some progress in completing her plan, but indicated the findings showed she had been "unable to recognize and break patterns of abuse that put her children at risk." *Id.* The Court stated it was "troubled by [the respondent-mother's] continued failure to acknowledge the likely cause of [the child's] injuries." *Id.*

The facts of the present case are inapposite to those of *In re D.W.P.* Nothing indicates Respondent-mother has continued to place her children at risk or failed to acknowledge her neglect was the cause of the initial injury to Carrie and the instance of lack of supervision of Anne. Respondent-mother stipulated to the allegations that Carrie and Anne were neglected, in that they did not receive proper care, supervision, or discipline, and lived in an environment injurious to their welfare, in the juvenile petition at adjudication.

In the order remanding this case for further consideration, our Supreme Court cited *In re D.W.P.*, and noted "the need for a court to review all applicable evidence, including historical facts and evidence of changed conditions to evaluate the probability of future neglect." We conclude no evidence or findings show the "neglect is ongoing, and there is a probability of repetition of neglect," or Respondent-mother's failure to make "reasonable progress." We reaffirm the analysis and reasoning, as extended herein, and result reached in our earlier opinion to reverse and remand.

## IV. Conclusion

Respondent-mother completed a parenting class, completed her substance abuse assessment, participated in individual therapy sessions to address her mental health, had re-engaged in treatment, was employed, submitted to drug testing, had established more reliable communications with DSS, had obtained stable housing

and transportation to become a better parent, and showed reasonable progress to reduce or remove the likelihood of future neglect.

Respondent-mother's minor daughters were removed from her care after the youngest child had spilled Mr. Clean onto herself and Respondent-mother had immediately sought medical assistance. No evidence shows and the trial court made no finding indicating either Respondent-mother had denied responsibility or a probability that her actions were likely to be repeated. *See In re D.W.P.*, ___ N.C. at ___, ___ S.E.2d at ___, 2020 WL 967615, at \*8; *In re B.O.A.,* 372 N.C. at 373, 831 S.E.2d at 306. The evidence and the trial court's findings support the opposite conclusion.

The trial court's order terminating Respondent-mother's parental rights is reversed and remanded to the trial court for disposition in accordance with the opinion and mandate of this Court filed 6 August 2019. *It is so ordered.*

REVERSED AND REMANDED.

Judges DILLON and BERGER concur.