IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-125

No. 364PA19

Filed 16 December 2022

IN THE MATTER OF: CUSTODIAL LAW ENFORCEMENT RECORDING SOUGHT BY CITY OF GREENSBORO

On discretionary review pursuant to N.C.G.S. § 7A-31 and on appeal of right of a substantial constitutional question pursuant to N.C.G.S. § 7A-30(1) of a unanimous decision of the Court of Appeals, 266 N.C. App. 473 (2019), affirming an order entered on 23 February 2018 by Judge Susan E. Bray in Superior Court, Guilford County. Heard in the Supreme Court on 29 August 2022.

*Fox Rothschild LLP, by Patrick M. Kane and Kip David Nelson, for petitioner-appellant City of Greensboro.*

*Ward and Smith P.A., by Chris S. Edwards and Alexander C. Dale, court-appointed amicus curiae.*

*Mark Dorosin, Elizabeth Haddix, Jaclyn Maffetore, Cheyenne N. Chambers, and Kimberly M. Rehberg for Beloved Community Center of Greensboro, League of Women Voters of the Piedmont Triad, Reclaiming Democracy, Roch Smith Jr., Guilford Anti-Racism Alliance, Homeless Union of Greensboro, Triad City Beat, The Carolina Peacemaker, Pulpit Forum of Greensboro and Vicinity, Democracy Greensboro, UNCG Chapter of the American Association of University Professors, St. Barnabas Episcopal Church, Community Play!/All Stars Alliance, American Civil Liberties Union of North Carolina Legal Foundation, NC WARN, and City of Durham, NC, amici curiae.*

HUDSON, Justice.

Here, we consider an order entered pursuant to N.C.G.S. § 132-1.4A(g) to release police video recordings of an incident on 10 September 2016 in Greensboro. In the order, the trial court imposed restrictions upon the possible use and discussion of the recordings by the Greensboro City Council. Interpreting these conditions as a "gag order," the City of Greensboro asked the trial court to modify the restrictions. The trial court summarily denied that request. On appeal, the Court of Appeals affirmed the trial court's order and maintained that the City was not entitled to relief. Because we conclude that the trial court abused its discretion by denying, without explanation, the City's Motion to Modify Restrictions, we vacate the decision of the Court of Appeals and remand the case to the trial court for a new hearing on the City's motion.

## I.    Factual and Procedural Background

On the evening of 10 September 2016, several police officers for the City of Greensboro arrested four Black men on a busy public sidewalk downtown. In a short cell phone video posted to YouTube titled "Greensboro police brutality,"[1] the officers can be seen shoving and arresting two of the men. Among other images, the YouTube video shows the police apparently using a chokehold on Aaron Garrett before throwing him to the ground. Mr. Garrett was able to stand and back away with his

---

[1] *Greensboro Police Brutality*, YouTube (Sept. 13, 2016), https://www.youtube.com/watch?v=MzdS-aSVR0w.

arms lowered and palms open. Several police officers are seen firing their tasers into Mr. Garrett, who is then depicted screaming, before he falls to the sidewalk while electricity visibly courses through his body.

¶ 3     The entire incident, including the prelude and aftermath, was also recorded on several body cameras worn by the police officers. While the YouTube video is less than two minutes long and depicts a single perspective, there are approximately four hours of police body camera video showing the incident from multiple angles. This case concerns the videos from these police-worn body cameras.

¶ 4     One of the arrested individuals alleged misconduct by the police and reported the officers to the Professional Standards Division (PSD) of the Greensboro Police Department. The PSD conducted an internal investigation and in 2017 concluded that the police officers behaved appropriately. The same individual then appealed the decision to the Greensboro Police Community Review Board (PCRB).

¶ 5     At that point, more than a year after the 2016 incident, various entities petitioned the Superior Court, Guilford County, for the release of the police body camera videos pursuant to N.C.G.S. § 132-1.4A(g), which governs the release of such videos. The PCRB petitioned for the release of the videos as part of its investigation. Two of the arrested individuals and the City also petitioned for the release of the videos. Subsection 132-1.4A(g) reads, in pertinent part, as follows: "The court . . . may

place any conditions or restrictions on the release of the recording that the court, in its discretion, deems appropriate." N.C.G.S. § 132-1.4A(g) (2021).

¶ 6    The trial court addressed all these petitions in one proceeding. On 16 January 2018, the trial court initiated an in-camera review of the videos and scheduled a hearing on the petitions, after which the trial court entered an order on 23 January 2018, granting the release of the videos with restrictions. Specifically, in response to the City's petition, the trial court checked the following boxes on the form order, under "findings of fact":

> [X] Release is necessary to advance a compelling public interest.
>
> [X] The recording contains information that is otherwise confidential or exempt from disclosure or release under State or federal law.
>
> [X] The person requesting release is seeking to obtain evidence to determine legal issues in a current or potential court proceeding.
>
> [ ] Release would reveal information regarding a person that is of a highly sensitive personal nature.
>
> [X] Release may harm the reputation or jeopardize the safety of a person.
>
> [X] Release would create a serious threat to the fair, impartial, and orderly administration of justice.
>
> [X] Confidentiality is necessary to protect either an active or inactive internal or criminal investigation or potential internal or criminal investigation.
>
> [X] There is good cause shown to release all portions of a

recording.

[X] Other *(if applicable)*: It is appropriate to place certain restrictions on the release.

The court then specified additional restrictions in an attachment to the order, which included the following language:

> Recordings are to be viewed in presence and under direction and control of the City Attorney for Greensboro or his designee. No one other than the City Manager, City Council members, or legal counsel for the City shall be present. No photographs, screen shots or other duplications or recordings of the body-worn camera footage shall be made. All viewers shall sign a pledge of confidentiality and are not to disclose or discuss the body-worn camera recordings except with each other in their official capacity as managers, council members and legal counsel for the City of Greensboro and as necessary to perform their legal duties. Failure to comply with these restrictions subjects viewers to the contempt powers of the court (fine of up to $500 and imprisonment of up to 30 days). If any of these restrictions pose a substantial impediment to the city manager, council members or city legal counsel from discharging their duties, the City Attorney may request modification of the restrictions (with notice and opportunity to be heard given to all parties).

The trial court placed similar restrictions on the other petitioners (the PCRB and the two arrested individuals).

¶ 7      Convinced that the order operated as a gag that imposed a substantial impediment to the discharge of its members' duties, the City Council voted unanimously to request that the trial court lift the restrictions on speaking about the videos. The members of the City Council also decided to refrain from watching the

videos until the order was lifted or modified. The City then filed a Motion to Modify Restrictions with the trial court.

¶ 8       At the subsequent hearing, the trial court responded abruptly after learning that the City was requesting a modification of the restrictions before viewing the videos, as the following colloquy demonstrates:

> THE COURT:  Well, that makes a difference. I'm not really inclined to entertain their motion if they haven't even bothered to watch it.
>
> [THE CITY'S ATTORNEY]:  Well, it's not that they haven't bothered to watch it. They definitely want to watch it.
>
> THE COURT:  Well, then, let them watch it. The motions are denied.
>
> . . . .
>
> [THE CITY'S ATTORNEY]:  And, Your Honor, if I could clarify, Your Honor —
>
> THE COURT:  That just doesn't make sense to me at all.
>
> [THE CITY'S ATTORNEY]:  If I could clarify, Your Honor —
>
> THE COURT:  In fact I think that's ridiculous to say I want to be able to discuss something I didn't even watch.
>
> [THE CITY'S ATTORNEY]:  If I could clarify that. It wasn't that — it's not that council does not want to watch this. They absolutely want to watch it.
>
> THE COURT:  Well —

> [THE CITY'S ATTORNEY]: It's a matter of — the question
> is, if Your Honor would go back and look at the council
> meeting, it's a question of, well, do we watch it and then we
> can't talk about it. Kind of like, you know, how does that
> help us? How does that help us answer the questions of our
> constituents?
>
> So the issue was, we would love to be able to talk about it
> once we watch it. So it's not a matter of they are just like
> too busy to watch it or that they don't want to watch it.
> They just wanted clarification as to whether or not they
> would be able to discuss it after they watch it.
>
> THE COURT: The motion is denied.

In a subsequent written order memorializing the denial of the City's motion, the trial court did not offer any reasoning or explanation for its decision; the order stated only the following: "[H]aving considered the entire court file and having heard arguments from all counsel, the [c]ourt has determined, in the [c]ourt's discretion, that all of the Motions should be denied." The City appealed, claiming that the court committed an "abuse of discretion as it pertains to City Council's First Amendment rights."

¶ 9 Before the Court of Appeals, the City argued that the trial court erred by imposing and refusing to modify a gag order on the City Council. Among other arguments, the City maintained that the gag order was arbitrary because the trial court did not "articulate any factual basis for [its] findings and provided no reasoning as to why the gag order was appropriate." Moreover, the City noted that the subsequent order denying its Motion to Modify Restrictions contained no explanation at all.

¶ 10        The police officers responded by stating that they also wanted the videos to be released and that they likewise wanted the gag order to be lifted. The officers emphasized that the recordings will show they did nothing wrong. However, for various reasons, they urged the Court of Appeals to dismiss the City's appeal. For instance, the officers asserted that the order was interlocutory. The officers also argued that the trial court did not abuse its discretion because state law explicitly gives the trial court authority to impose any conditions on the release of body camera video. The officers contended that the City simply made poor arguments to the trial court and that such "advocacy failures" do not render the trial court's ruling an abuse of discretion.

¶ 11        In a published, unanimous opinion filed on 6 August 2019, the Court of Appeals affirmed the trial court's denial of the City's Motion to Modify Restrictions. *In re Custodial Law Enf't Recording*, 266 N.C. App. 473, 479 (2019). The Court of Appeals declined to entertain the City's argument that the restrictions were an unjustified abuse of discretion. *Id.* at 476. The Court of Appeals instead analyzed the case on First Amendment grounds and relied on a single case, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), to conclude that the order did not violate the City's First Amendment rights because "the gag order only restricts the council's speech about matters that the council, otherwise, had no right to discover[,]" *In re Custodial Law Enf't Recording*, 266 N.C. App. at 477. However, *Seattle Times* had not been briefed,

argued, or cited by any party at the Court of Appeals. Further complicating matters, the Court of Appeals did not state the level of First Amendment scrutiny they applied. And—perhaps because the record here is sparse—the Court of Appeals did not explain its conclusion that "protecting the reputation and safety of those individuals, as well as safeguarding the administration of justice, presents a substantial government interest for which the trial court's restrictions are no greater than necessary." *Id.* at 479.

¶ 12        The City appealed to this Court on the basis of a constitutional question and, in the alternative, petitioned the Court for discretionary review. On 3 February 2021, this Court both retained the notice of appeal and allowed the City's petition.

## II.        Analysis

¶ 13        The City now argues that the Court of Appeals misapplied fundamental principles of constitutional law and that its decision must be reversed. The City contends primarily that the City Council members have a right to publicly discuss the body camera videos, that the gag order violates this right, and that the violation cannot be justified under strict or intermediate scrutiny. The City does not mount a facial challenge to the statute. The City also contends that the trial court abused its discretion. It asks for this matter to be remanded to the trial court with instructions to lift the gag order on the City Council members.

¶ 14        In response, the police officers themselves withdrew from participating in the

case after we allowed review. Court-appointed amicus curiae (respondent) argues that the decision of the Court of Appeals should be affirmed for three reasons. First, respondent argues that the City does not have free speech rights. Second, respondent claims that even if the City has free speech rights, the gag order is subject to and survives intermediate scrutiny. Third, respondent asserts that, in the alternative, the restrictions are not a gag order but a permissible set of time, place, and manner restrictions.

¶ 15    We hold that the trial court's summary denial of the City's Motion to Modify Restrictions was arbitrary, and therefore it was an abuse of discretion. Accordingly, we need not consider the constitutional arguments raised here. *See James v. Bartlett*, 359 N.C. 260, 266 (2005) ("[A]ppellate courts must 'avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds.' " (quoting *Anderson v. Assimos*, 356 N.C. 415, 416 (2002))). We vacate the decision of the Court of Appeals and remand to the trial court for a new hearing on the City's Motion to Modify Restrictions.

**A. Standard of Review**

¶ 16    By statute, trial courts enjoy the authority to "place any conditions or restrictions on the release of the recording that the court, in its discretion, deems appropriate." N.C.G.S. § 132-1.4A(g). Accordingly, orders imposing or denying relief from restrictions on the release of body camera videos are reviewed for abuse of

discretion. A trial court abuses its discretion when its ruling "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Chappell v. N.C. Dep't of Transp.*, 374 N.C. 273, 280 (2020) (quoting *State v. Hennis*, 323 N.C. 279, 285 (1988)). A trial court also abuses its discretion when it makes an error of law. *Da Silva v. WakeMed*, 375 N.C. 1, 5 n.2 (2020). Questions of law are reviewed de novo. *Id.* at 5.

**B. Abuse of Discretion Analysis**

¶ 17    First, the City has preserved the argument that the denial of its Motion to Modify Restrictions is an abuse of discretion. The City argued to the trial court that the restrictions "pose a substantial impediment" to the City Council and prevent its members "from fulfilling their Oath of Office." The City appealed from the trial court's denial of its motion claiming the denial "constitut[ed] an abuse of discretion as it pertains to City Council's First Amendment rights." The City's discussion of First Amendment rights is only indirectly applicable to the abuse of discretion analysis. However, this is not the only argument the City makes. Before the Court of Appeals, the City argued that the denial of the Motion to Modify Restrictions "contained no rationale at all." The City dedicated several pages of its brief to arguing that the denial was internally inconsistent, unexplained, unsupported by the evidence, and harmful to "the Council members' ability to fulfill their Oath of Office." In its brief to this Court, the City again pursues that argument: "[E]ven if the trial court had the

discretion envisioned by the Court of Appeals in the abstract, maintaining the gag order was inappropriate in these circumstances." Thus, it is appropriate for this Court to review the trial court's denial of the City's Motion to Modify Restrictions for abuse of discretion on grounds that it is arbitrary or manifestly unsupported by reason.

¶ 18 Next, we conclude that the trial court's denial of the City's motion was arbitrary. In its Motion to Modify Restrictions filed on 16 February 2018, the City explained that the City Council had voted to watch the videos but it had also voted to request relief from the restrictions first. The motion contained several possible reasons why the restrictions were a substantial impediment: the restrictions directly contradicted the City Council members' duties as elected officials, prevented the City Council members from engaging in political discourse, impeded the City Council members' ability to respond to questions from the public, prevented the City Council members from supervising other municipal departments, and made little sense given that the cellphone video of the event was already circulating in the community.[2]

¶ 19 The City also maintained that several potential justifications for the restrictions no longer pertained. The internal investigations had concluded, and the criminal trials of all individuals depicted in the videos were over. On 19 February 2018, even the police officers' attorney agreed that lifting the gag would benefit the

---

[2] The trial court had previously noted that, "I think the real danger is if you have excerpts or snippets of this being shown and people don't see the whole — the whole view, it's — it can be very — it can misrepresent the whole event."

police officers stating, "I understand that it — that there is probably a benefit in some respect to the police officers so that the city council members can say, well, everything was right. The police did the right thing." Yet in ruling on the motion, the trial court, rather than considering these proffered reasons to modify the restrictions, apparently considered one fact and one fact alone:

> [THE CITY'S ATTORNEY]: As of today the city council does not know what's on the body-worn camera footage.
>
> THE COURT: Well, that makes a difference. I'm not really inclined to entertain their motion if they haven't even bothered to watch it.
>
> [THE CITY'S ATTORNEY]: Well, it's not that they haven't bothered to watch it. They definitely want to watch it.
>
> THE COURT: Well, then, let them watch it. The motions are denied.

¶ 20     This ruling can only be deemed arbitrary, given that the trial court gave no explanation of the possible relevance of viewing the video to whether the restrictions "pose a substantial impediment" to the City Council members' ability to fulfill their duties. Without more discussion of the reasons for the denial of the motions, we cannot know if there were any. Thus, we conclude that the trial court's reaction to one possibly irrelevant factor by immediately denying the Motion to Modify Restrictions fails to demonstrate any exercise of discretion, but rather its abuse.

¶ 21     Moreover, the written order fails to clarify the trial court's ruling. "To show an abuse of discretion and reverse the trial court's order, the appellant has the burden

to show the trial court's rulings are manifestly unsupported by reason, or could not be the product of a reasoned decision." *Winkler v. N.C. State Bd. of Plumbing*, 374 N.C. 726, 735 (2020) (cleaned up). This is a high bar and is not an opportunity to second guess the trial court's wisdom. The only consideration is "whether the trial court's actions are fairly supported by the record." *State v. Whaley*, 362 N.C. 156, 160 (2008) (quoting *State v. Peterson*, 361 N.C. 587, 603 (2007)). "Fairly supported" means "there is competent evidence to support the court's findings and . . . those findings support the court's conclusions." *GE Betz, Inc. v. Conrad*, 231 N.C. App. 214, 242 (2013) (citing *Dyer v. State*, 331 N.C. 374, 376 (1992)), *writ denied, review denied*, 367 N.C. 786 (2014). In sum, if there is any competent evidence to support the trial court's findings and conclusions, then there is no abuse of discretion.

¶ 22 Here, the order contains no findings of fact, analysis, explanation, or conclusions of law. Instead, the order merely states the following: "[T]he [c]ourt having considered the entire court file and having heard arguments from all counsel, the [c]ourt has determined, in the [c]ourt's discretion, that all of the Motions should be denied." "Where no findings are made, proper findings are presumed, and our role on appeal is to review the record for competent evidence to support these presumed findings." *Carlisle v. CSX Transp., Inc.*, 193 N.C. App. 509, 516 (2008) (quoting *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615 (2000)). On such

review, we must assume the trial court found that the restrictions did not pose a substantial impediment to the City Council members in discharging their duties.

¶ 23        However, because no competent evidence in the record supports the finding that the restrictions are not a substantial impediment, we hold that the trial court abused its discretion in denying the City's motion. Notably, there is almost no evidence in the record at all. All we have are the City's motions, the transcripts, and the court's bare-bones orders. Before the trial court, the police officers' attorney could not point to evidence and instead argued that some people will still "allege[ ] conspiracies and everything else" and argued, "[I]t's a better policy, I would contend, Your Honor, to stick with Your Honor's order in all situations because I think that is going to end some of this nonsense that we're spending on body-cam footage." Even if these assertions were evidence, they do not support the conclusion that the restriction is not a substantial impediment to the City Council. Because the trial court's ruling is entirely unsupported by the record, we conclude that the trial court abused its discretion in denying the City's Motion to Modify Restrictions.

### III.    Conclusion

¶ 24        History teaches that opaque decision-making destroys trust; recent history involving police body cameras emphasizes this risk. Nearly every party here sought transparency. Both the arrested individuals and the police officers recorded their actions. The City Council sought to answer questions and explain the City's response

by publicly discussing the facts behind their decisions. And the officers themselves hoped to clear their names by urging the release of all of the body camera videos. Yet, with no explanation, the trial court halted this process, leaving the people of Greensboro in the dark for more than six years. On this record, we hold that the trial court abused its discretion.

We vacate the decision of the Court of Appeals and remand to that court for further remand to the trial court for a new hearing on the Motion to Modify Restrictions and for such further proceedings not inconsistent with this decision, as are warranted.

VACATED AND REMANDED.

Justice BERGER did not participate in the consideration or decision of this case.

Chief Justice NEWBY concurring in the result only.

The General Statutes grant trial courts great latitude in determining the release of body camera recordings. N.C.G.S. § 132-1.4A(g) (2021). No one questions that the trial court's original order complied with the statute. Although N.C.G.S. § 132-1.4A(g) does not require the trial court to make findings of fact, on the record before this Court, the basis for the denial of the motion is unclear, rendering it impossible for this Court to determine if the ruling was arbitrary. Thus, the matter should be remanded to the trial court for clarification. Therefore, I concur in the result only.

Justice BARRINGER joins in this concurring opinion.