STROUD, Judge.
 

 *65
 
 Respondent appeals from an order terminating her parental rights to her child. For the following reasons, we reverse and remand.
 

 *66
 
 I. Background
 

 In September of 2012, while incarcerated on drug-related charges, respondent gave birth to Sam.
 
 [1]
 
 On 14 March 2013, Wake County Human Services, "WCHS," filed a petition alleging Sam was a neglected and dependent juvenile and also received non-secure custody of Sam. On 9 April 2013, after a hearing, the trial court entered a consent adjudication and disposition order determining Sam was a neglected and dependent juvenile. The order contained various requirements for respondent to complete in order to be reunified with Sam, including that she consistently visit with Sam, obtain sufficient income and housing, obtain a substance abuse assessment, resolve her pending legal issues, and complete a psychological evaluation and parenting class. On 23 July 2014,
 
 *863
 
 WCHS filed a motion to terminate respondent's parental rights. On 8 October 2014, after a hearing, the trial court entered an order terminating respondent's parental rights for failure to make reasonable progress regarding the conditions which led to Sam's removal from respondent.
 
 [2]
 
 Respondent appeals.
 

 II. Standard of Review
 

 A proceeding to terminate parental rights is a two step process with an adjudicatory stage and a dispositional stage. A different standard of review applies to each stage. In the adjudicatory stage, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that one of the grounds for termination of parental rights set forth in N.C. Gen.Stat. § 7B-1111(a) exists. The standard for appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings of fact support its conclusions of law.
 
 Clear, cogent,
 

 *67
 

 and convincing describes an evidentiary standard that is stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt.
 
 If the petitioner meets its burden of proving at least one ground for termination of parental rights exists under N.C. Gen.Stat. § 7B-1111(a), the court proceeds to the dispositional phase and determines whether termination of parental rights is in the best interests of the child. The standard of review of the dispositional stage is whether the trial court abused its discretion in terminating parental rights.
 

 The trial court's conclusions of law are reviewable
 
 de novo
 
 on appeal.
 

 In re T.J.D.W.,
 

 182 N.C.App. 394
 
 , 400-01,
 
 642 S.E.2d 471
 
 , 475 (emphasis added) (citations, quotation marks, and brackets omitted),
 
 aff'd per curiam,
 

 362 N.C. 84
 
 ,
 
 653 S.E.2d 143
 
 (2007). "Clear, cogent, and convincing evidence is evidence which should fully convince."
 
 North Carolina State Bar v. Talford,
 

 147 N.C.App. 581
 
 , 587,
 
 556 S.E.2d 344
 
 , 349 (2001) (citation and quotation marks omitted),
 
 aff'd and modified,
 

 356 N.C. 626
 
 ,
 
 576 S.E.2d 305
 
 (2003).
 

 III. Reasonable Progress
 

 Respondent contends that the trial court's findings of fact do not support the conclusion that she failed to make reasonable progress. We will address each of the requirements set by the trial court's prior orders and the trial court's findings of fact as to respondent's compliance with each item. The trial court had ordered respondent to (1) "consistently visit the child in accordance with a written visitation plan[,]" and the trial court found that "[s]ince her release from jail, the mother has consistently visited with the child.... Since June 2014 when her visits were changed to bi-weekly instead of weekly visits, ... [respondent] has been consistent in attendance and in punctuality."
 

 The trial court had ordered respondent to (2) "obtain and maintain suitable housing, sufficient for herself and the child[ ]." The trial court found respondent "has been living in a friend's home where she does not pay rent, is not on the lease, and where she helps out the with groceries. She has [resided in that] home for approximately 9 months." The trial court did not address in the order whether the housing was "suitable" or "sufficient for herself and the [child.]" However, the findings of fact
 
 *68
 
 seem to indicate that the residence was stable, since she had resided in the same location for the 9 months since her release from jail. When rendering the ruling, the trial court addressed respondent's living arrangements in more detail:
 

 *864
 
 I will be honest with you, the housing is concerning to me. It appears that she's been there for some time. I don't know anything about the financial arrangements. I don't know anything about how long she can stay. And apparently, she has no legal basis for being there, but [the social worker] says that the home appears to be appropriate. There are no concerns with the roommate.
 
 So I'm not going to find that she can't-that she doesn't have suitable housing.
 

 (Emphasis added.) We note that despite the absence of a direct finding as to "suitability" of respondent's housing in the written order, the trial court did state that respondent's housing was suitable, although by use of a double negative.
 

 The trial court had ordered respondent to (3) "obtain and maintain legal employment sufficient to meet the needs of herself and the children" and found that
 

 [t]he Court found at the June 2014 hearing that the mother had not been able to obtain employment, partially because of her pending criminal charges. At this hearing on the motion to terminate her parental rights, she testified that she secured a job with a cleaning service in May 2014, and has been working there 5 nights per week for 4 hours per night and receiving cash payment of about $435.00 per month. She is not keeping records of her wages, and has not offered proof of employment or her wages. Regardless of the truth of her assertions, the worker has indicated to the mother that the wages are not adequate to meet the needs of she and [Sam]. The mother offered no evidence that she receives or will receive any other supports, except that she was waiting on ... the appeal decision to receive SSI which she was receiving prior to her arrest.
 

 Thus, the trial court found that respondent had found "legal employment," despite the impediment of pending criminal charges, and that she had applied for SSI. We would agree with the social worker that $435.00 per month might not be sufficient income to support a mother and a child, but North Carolina General Statute § 7B-1111(a)(2) provides that "no parental rights shall be terminated for the sole reason
 
 *69
 
 that the parents are unable to care for the juvenile on account of their poverty." N.C. Gen.Stat. § 7B-1111(a)(2) (2013).
 

 The trial court had ordered respondent to (4) "submit to a substance abuse assessment and follow all recommendations[.]" Despite respondent's arrest for drug charges, all of the evidence in our record seems to indicate that her criminal charges were a result of Sam's father, Mr. Carl Smith's, involvement in drug abuse and trafficking of drugs. Other than noting that respondent smoked marijuana in the past, respondent's psychological evaluation did not note any involvement with illegal drugs and did not recommend any treatment for substance abuse. The trial court did not make a written finding of fact regarding the substance abuse assessment. During rendition, the trial court stated, "I have no concerns about the substance abuse assessment. She had one drug screen, and that's apparently all that the County required of her, and that screen was negative."
 

 The trial court had ordered respondent to (5) "resolve all legal issues regarding her criminal charges" and found that respondent "is waiting for the disposition of the father's criminal case before proceeding with the disposition of her case. The Court was not given any indication of when this would occur. It is still possible that the mother may be incarcerated if convicted of the pending charges." Respondent's unresolved criminal charges seem to be the primary reason for the trial court's conclusion that respondent failed to make reasonable progress, but the trial court's portion of the finding regarding the resolution of Mr. Smith's criminal charges which stated, "The Court was not given any indication of when this would occur[,]" is not supported by the evidence.
 

 All of the evidence tended to show an expectation that Mr. Smith would be pleading guilty and that as a result of his plea, respondent would then plead and not have to
 
 *865
 
 serve additional time in jail. The WCHS social worker testified that she had been in contact with respondent's attorney for the criminal matter, and he had "basically confirmed everything" respondent told her regarding a possible plea for time served and also testified that respondent's attorney "reiterated ... that he would not intend on putting [respondent's] case on the calendar until [Mr. Smith's] case had gone on the calendar first." The WCHS social worker further testified that Mr. Smith had a court date the following week, on September 24, so the evidence did provide some "indication" of when respondent's criminal issues would be addressed. Even the trial court stated, when rendering the order, "I understand, from her standpoint, why she would want to wait to see what is going to happen with Mr. Smith, if there might not be any further significant jail time for her[.]"
 
 *70
 
 We realize that even if Mr. Smith's criminal charges were on the court calendar for the next week, there is always uncertainty about whether the case will be reached or if the intended resolution will actually happen; however, we are concerned that the respondent's parental rights seem to have been terminated in large part because of the "possibility" that she may be incarcerated. The trial court may not have found the evidence from the social worker or respondent to be credible, but there was an "indication" of when the criminal matters would be resolved, and it was expected to happen very soon. Certainly, we agree that it is not reasonable to wait for years for the criminal process to conclude, but the evidence here shows that respondent's criminal matters might be resolved the very next week.
 
 [3]
 
 We cannot discern based upon the record why the trial court did not wait for Mr. Smith's court date to find out if respondent would actually be subject to further incarceration or if she would be able to resolve the criminal charges as anticipated. In any event, no evidence shows that respondent had acted in any way to delay the criminal matters or done anything other than follow her attorney's instructions.
 

 The trial court had ordered respondent to (6) "complete a psychological evaluation and follow all recommendations" and found:
 

 16. The mother completed a psychological evaluation while she was in jail, and when she was released in December 2013, she met with the worker to go over the evaluation and the expectations regarding recommendations. The mother is diagnosed with depression, ADD, and psychosis which requires her to take and manage medicines. The psychological [evaluation] recommended strongly that the mother have intensive
 
 *71
 
 individual counseling, develop a support group to assist her in parenting the child and making some important decisions, and that intensive in-home services would have to be implemented prior to any placement of the child in her home.
 

 ....
 

 17. The mother was referred to Monarch for mental health services, but she has not sufficiently engaged in mental health counseling through Monarch. Prior to the June 2014 hearing, she had attended some sessions, but had missed at least 5 sessions, and was not making progress toward
 
 *866
 
 her treatment goals. The mother discovered during therapy that she was having a difficult time perceiving reality. She was prescribed medication for this schizophrenic-like symptom, which caused an allergic reaction and which had to be reviewed by a psychiatrist. She was attending therapy only one time per month, which she said was all her therapist is requiring. The Court found at the June 2014 hearing, more than 15 months from the filing of the petition and 21 months since her child was placed outside of her home, that ... [respondent] did not seem to understand the importance of her engaging in intensive therapy to be able to safely parent her child. Counseled by her social worker that her current therapy regime did not meet the recommendation for intensive therapy made in her psychological evaluation, the mother did arrange with her therapist to have a session every three weeks, and she attended sessions under this schedule between June 2014 and this hearing on September 18, 2014. No evidence was offered by the mother to show any progress in her therapy. The social worker testified that the mother was not meeting the requirement of intensive therapy in light of her serious mental health problems and the recommendations of the psychological [evaluation].
 

 Thus, the trial court's findings acknowledge that respondent submitted to the psychological evaluation and took medications as recommended.
 

 Respondent's psychological evaluation actually did not recommend "intensive individual counseling[,]" and in that regard, the trial court's finding of fact is not supported by the evidence. The psychological evaluation actually recommended "individual counseling services[,]" and
 
 *72
 
 the trial court noted that respondent attended therapy, and although she had missed some sessions, once a month was the frequency required by her therapist. Furthermore, when respondent was informed that she would benefit from further therapy, she increased her sessions to once every three weeks and had regularly attended those sessions. It was also recommended that respondent take medication for her mental well-being, and according to the evidence, respondent took her medications as prescribed.
 

 It seems that the trial court would have preferred that respondent receive more frequent therapy than she had, but our record does not support a finding that respondent failed to comply with the therapy as recommended by her therapist or required by the trial court's prior orders. Other than missing a few sessions, respondent complied with her therapist's initial recommendations regarding the frequency of therapy, and upon being informed she needed more therapy, she fully complied with her social worker's instructions in both having more therapy and faithfully attending her sessions. We also recognize that attending therapy and actually benefitting from it are two different things, but it is difficult to say that there was clear, cogent, and convincing evidence in this case that respondent was not making progress. While respondent may benefit from more frequent treatment, the evidence showed that she complied with the frequency of treatment required of her.
 

 The trial court ordered respondent to (7) "complete a positive parenting class and demonstrate knowledge learned in her interactions with the children in her life choices[.]" The trial court found that respondent "attended the MOVE program with SAFEChild to learn more about the impact of domestic violence on children" and during rendition stated, "while I applaud the fact that she has completed the parenting class, again, I note she did not complete it within 12 months[.]" As to respondent's parenting skills, we also note that respondent had another child, Sue, who was seven years old at the time respondent was arrested. Our record indicates that respondent had never had any prior social services involvement regarding Sue.
 
 [4]
 

 *73
 
 The trial court ordered respondent to (8) "maintain regular contact with the assigned
 
 *867
 
 social worker, notifying WCHS of any change in situation or circumstances within 5 business days." The trial court did not make a finding as to this requirement in its order, but all of the evidence, including the WCHS social worker's testimony, indicated that respondent did maintain contact with her social worker throughout the case.
 

 After addressing each of the requirements of respondent's case plan, it appears that the possibility of respondent's incarceration was the primary factor supporting the trial court's conclusion that she had failed to make reasonable progress. Our concern about this factor is that it was only a possibility of incarceration which may not even come to pass, and the evidence indicated that respondent's criminal matter would be disposed of quite soon. A secondary factor was respondent's failure to make adequate progress in addressing her mental health issues, but in this regard respondent did essentially all that the trial court or her therapist had required. The only other factor which could support the trial court's conclusion was respondent's meager income, but again, poverty alone cannot be a basis for termination of parental rights.
 
 See
 
 N.C. Gen.Stat. § 7B-1111(a)(2). While "[e]xtremely limited progress is not reasonable progress[,]"
 
 In re Baker,
 

 158 N.C.App. 491
 
 , 496-97,
 
 581 S.E.2d 144
 
 , 148 (2003) (citations and quotation marks omitted), certainly perfection is not required to reach the "reasonable" standard. As noted above, some portions of the trial court's findings of fact are not supported by the evidence, and although they are just portions of the findings, they are findings on the pivotal issues. In addition, when we consider the failures as addressed by the trial court in tandem with the numerous ways respondent did comply with her parenting plan, the findings of fact do not support the conclusion of law that respondent has failed to make reasonable progress. While we fully appreciate the importance of resolving this termination case as quickly as possible so that Sam may have a stable and safe home, we must reverse the order terminating respondent's parental rights.
 

 IV. Conclusion
 

 For the foregoing reasons, we reverse and remand; for this reason, we need not address respondent's other issues raised on appeal.
 

 REVERSED and REMANDED.
 

 Judges GEER and TYSON concur.
 

 [1]
 

 Pseudonyms will be used for both the children and parents to protect the identity of the minors involved.
 

 [2]
 

 WCHS's brief does not properly note the disposition by the trial court. WCHS's brief states, "The court ultimately concluded that both parents neglected the minor child and were incapable of providing appropriate care for the child in the future[,]" and then cites to DSS's motion to terminate as its evidence. However, the trial court did not find that respondent had neglected Sam. The trial court specifically stated when rendering the order that it did not conclude there were grounds for termination based on respondent's neglect, and the written order only finds grounds for the termination of respondent's rights due to failure to make reasonable progress.
 

 [3]
 

 We realize that hindsight is 20/20, and this information was not before the trial court, but we can take judicial notice of the fact that the official records of the North Carolina Department of Public Safety, Division of Adult Correction show that Carl Smith is currently serving active time in prison for the crimes for which he was charged at the inception of this WCHS proceeding, committed on the same date that WCHS received an investigative assessment regarding Mr. Smith's arrest.
 
 See
 
 N.C. Gen.Stat. § 8C-1, Rule 201 (2013) (regarding judicial notice);
 
 see also
 

 State v. Black,
 

 197 N.C.App. 373
 
 , 375,
 
 677 S.E.2d 199
 
 , 201 (2009) ( "Although not included in the record on appeal, we take judicial notice that defendant has completed this sentence[.]") Mr. Smith was sentenced for his crimes on 9 October 2014, within a month after the hearing on termination of parental rights, which is consistent with the evidence provided by respondent and the social worker of the expected timing for resolution of the criminal matters. The official records also show that respondent has never been committed to the Division of Adult Correction to serve any active sentence for any crime, which is consistent with the social worker's testimony that respondent expected not to serve any additional active sentence upon entering a plea.
 

 [4]
 

 Our record indicates that Sue was a well-behaved and well-adjusted child with no apparent issues that needed to be addressed at the time of WCHS's intervention. While our record as to termination deals only with Sam, the initial order for adjudication did include Sue so our record includes information regarding her as well. Based upon our record, the permanent plan for Sue was custody with her maternal grandmother, and respondent's parental rights to Sue would not be terminated.