IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-451

No. COA21-745

Filed 5 July 2022

New Hanover County, Nos. 15 JT 165-66, 19 JT 288

IN THE MATTERS OF:

A.H.G., O.H.G., J.D.H.G.

Appeal by Respondent-Mother from order entered 14 September 2021 by Judge

J.H. Corpening, II, in New Hanover County District Court.  Heard in the Court of

Appeals 24 May 2022.

*Garron T. Michael for Petitioner-Appellee New Hanover County Department of Social Services.*

*Nelson Mullins Riley & Scarborough, LLP, by Carrie A. Hanger, for Guardian ad Litem.*

*Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender Jacky Brammer, for Respondent-Appellant Mother.*


INMAN, Judge.


Respondent-Mother ("Mother") appeals from an order terminating her

parental rights after her children had been removed from her care and adjudicated

neglected or neglected and dependent on three separate occasions between 6 July

2015 and 25 November 2019.  She challenges the trial court's grounds for

termination, arguing that (1) she had made reasonable progress in correcting the

conditions of neglect which led to her children's removal, and (2) the record lacked

clear, cogent, and convincing evidence of a likelihood of future neglect. In addition, Mother asserts the trial court abused its discretion in determining termination was in the best interests of the children because it failed to make certain relevant findings. After careful review of the record, we affirm the order of the trial court.

## I.    FACTUAL & PROCEDURAL BACKGROUND

¶ 2    The record below discloses the following:

¶ 3    On 6 July 2015, the New Hanover County Department of Social Services ("DSS") filed petitions alleging Jorge and Oscar,[1] then ages three and one, respectively, were neglected and dependent based, in large part, upon Mother's inability to care for her children because of her abuse of alcohol. The trial court placed the children in nonsecure custody of DSS. On 11 September 2015, the trial court adjudicated Oscar and Jorge neglected and dependent and determined it was in their best interest to remain in DSS custody. After conducting a review hearing, on 28 April 2016, the trial court returned legal custody of the children to Mother because she had demonstrated her ability to provide a safe and stable home, maintained employment, consistently completed negative drug and alcohol screens, and participated in weekly individual therapy and Alcoholics Anonymous ("AA") meetings.

---

[1] We use pseudonyms to protect the identities of the minor children.

¶ 4         On 20 November 2017, DSS filed a second petition alleging Oscar and Jorge were neglected because of Mother's inappropriate discipline and continued substance abuse. The children were again placed in the nonsecure custody of DSS. On 14 February 2018, the trial court adjudicated the children neglected and ordered that DSS maintain legal custody and placement responsibility for the children. After the review hearing, on 28 March 2018, the trial court ordered the children to remain in the custody of DSS.

¶ 5         Mother's third child, Angel,[2] was born in January 2019. In June 2019, Oscar and Jorge returned to Mother's care in a trial home placement. Jorge, who had previously engaged in sexually inappropriate behavior with Oscar, was no longer displaying such behavior. Both boys had successfully completed therapy. After a permanency planning hearing in October 2019 and with the agreement of all parties, the trial court determined Mother had "demonstrated her ability to provide a safe and stable home," "maintained independent housing and verifiable employment," was "participating in individual therapy and family therapy," was "attending Alcoholic Anonymous meetings," "maintained her sobriety," and "all of [the boys] needs are being met." As a result, the trial court granted Mother custody of Oscar and Jorge.

¶ 6         One month later, Mother was present in the room when Oscar and Jorge again

_____

[2] Also a pseudonym.

engaged in sexually inappropriate behavior. In response, she beat both children with a belt, leaving significant marks and bruises. On 25 November 2019, DSS filed a third petition alleging all three children, Oscar, Jorge, and Angel, were abused, neglected, and dependent. An order for nonsecure custody was entered the same day. On 11 February 2020, the children were adjudicated neglected and dependent. Oscar and Angel were placed in a foster home together, while Jorge was placed in a separate foster home because of his sexually inappropriate behavior.[3]

¶ 7     Mother entered into a case plan with DSS and agreed to maintain housing and employment, engage in parent education, submit to random drug and alcohol screens, and complete a "Comprehensive Clinical Assessment." She attended 14 out of 20 therapy sessions in 2020, completed the clinical assessment, and participated in AA meetings. Mother had housing and a job. She remained sober and submitted to random drug screens. During this time, Mother consistently participated in supervised visits with her children, "the quality of the visits [] improved," "the children [were] respectful towards one another and [Mother]," and Mother "engage[d] in age and developmentally appropriate play."

¶ 8     On 15 March 2021, DSS petitioned to terminate Mother's parental rights

---

[3] The children's fathers did not make themselves available to the trial court, DSS, or the *guardian ad litem*, enter into a "Family Services Agreement" with DSS, or provide care or financial support for the children. DSS could not locate an appropriate maternal or paternal relative willing and able to provide a safe home for the children either.

pursuant to N.C. Gen. Stat. § 7B-1111(a)(1)-(2) (2021). The petition alleged: (1) the children had been neglected and there was a likelihood of repetition of neglect, and (2) the children had been in placement outside the home for more than twelve months and Mother had not made reasonable progress, under the circumstances, to correct the conditions which led to removal. The matter came before the juvenile court in New Hanover County on 12 July, 16 August, and 20 August 2021. Mother, her therapist, Ana Blaney ("Ms. Blaney"), and a DSS social worker, Samantha Muse ("Ms. Muse"), testified. Considering the best interests of the children, the trial court terminated Mother's parental rights on 14 September 2021. Mother appealed.

## II. ANALYSIS

### A. Standard of Review

¶ 9    We review a trial court's adjudication of abuse, neglect, or dependency to determine whether there is clear, cogent, and convincing evidence to support the findings of fact and whether the findings of fact support the conclusions of law. *See In re Z.J.W.*, 376 N.C. 760, 2021-NCSC-13, ¶14. The clear, cogent, and convincing evidence standard is "greater than the preponderance of the evidence standard required in most civil cases." *In re Montgomery*, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984). "Unchallenged findings are deemed to be supported by the evidence and are binding on appeal." *In re S.C.L.R.*, 378 N.C. 484, 2021-NCSC-101, ¶ 9 (citation omitted). We review the trial court's decision to terminate parental rights,

however, solely for abuse of discretion. *In re S.D.C.*, 2022-NCSC-55, ¶ 11. A trial court abuses its discretion when its "ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re A.A.*, 2022-NCSC-66, ¶ 26 (quotation marks and citations omitted).

## B. Discussion

### 1. Evidence supports the trial court's findings of fact and conclusion that Mother failed to make reasonable progress to correct the conditions which led to her children's removal.

¶ 10 Mother asserts the trial court erred in determining she had not made reasonable progress on her case plan as a ground for terminating her parental rights. We disagree.

¶ 11 Pursuant to our General Statutes, the trial court terminated Mother's parental rights based on findings that:

> (1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101.
>
> (2) The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. No parental rights, however, shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.

§ 7B-1111(a)(1)-(2). For termination under Subsection 7B-1111(a)(1), a neglected

juvenile is one whose parent, caretaker, or guardian does any of the following:

> a. Does not provide proper care, supervision, or discipline.
>
> b. Has abandoned the juvenile.
>
> c. Has not provided or arranged for the provision of necessary medical or remedial care.
>
> . . . .
>
> e. Creates or allows to be created a living environment that is injurious to the juvenile's welfare.

*Id.* § 7B-101(15).

¶ 12 To adjudicate termination of parental rights pursuant to Subsection 7B-1111(a)(2), a parent must willfully fail to make reasonable progress under the circumstances. *See In re Z.A.M.*, 374 N.C. 88, 95, 839 S.E.2d 792, 797 (2020). "[P]erfection is not required." *In re S.D.*, 243 N.C. App. 65, 73, 776 S.E.2d 862, 867 (2015). Instead, "[w]illfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001). We evaluate the "nature and extent" of the parent's reasonable progress "for the duration leading up to the hearing on the motion or petition to terminate parental rights." *In re A.C.F.*, 176 N.C. App. 520, 528, 626 S.E.2d 729, 735 (2006).

¶ 13 Here, in a disposition order from February 2020, the trial court ordered Mother to comply with her case plan and complete a clinical assessment, follow the

corresponding recommendations, submit to random drug screens, engage in parenting classes, and maintain housing and employment. Mother argues she completed or made progress on each element and she challenges several findings of fact related to her case plan progress as unsupported by clear, cogent, and convincing evidence. We address them, categorically, in turn.

### a. *Therapy and Parenting Education*

First, Mother challenges several findings about her participation in therapy and parenting education classes:

> 15. In January 2020, weekly individual counseling for [Mother] was recommended in order to address depression and anxiety symptoms.
>
> 16. [Mother] failed to consistently participate in weekly therapy with Ana Blaney at Clinica Latina as recommended. Due to the COVID-19 pandemic, [Mother] attended some therapy sessions in person and some via telephone or virtually, but she lacked consistency. [Mother] cited sickness, employment and transportation as barriers to allowing her to attend sessions. She attended eleven telephonic sessions, five in-person sessions and two telehealth visits. Sessions typically lasted fifty to sixty minutes.
>
> 17. [DSS] contracted with Sheryl Ewing of Family Support Network to evaluate [Mother]'s parenting abilities and attempt to address issues in one-on-one sessions. Ms. Ewing's evaluation recommended that a higher level of parenting education was necessary for [Mother]. Ms. Ewing uses Triple P Positive Parenting training techniques in group and individual sessions which focuses more on basic parenting skills. The training and education she typically provides does not reach the level required to

assist [Mother].

18. There are no parenting courses available in New Hanover County or the surrounding counties that would be able to meet the intensive needs of [Mother]. She requires significant individual therapy in order to identify child sexual abuse and learn to accept her children's prior sexual abuse and trauma and how to address it.

. . . .

27. Ana Blaney's last appointment with [Mother] occurred on April 19, 2021. [Mother] communicated plans to seek an alternate provider, however, she never scheduled sessions with another provider.

We agree with Mother that a portion of Finding 15 is unsupported by the evidence because Mother and Ms. Blaney did not discuss weekly therapy appointments until November 2020 as opposed to January 2020. We thus disregard that portion of the finding. *See In re R.G.L.*, 379 N.C. 452, 2021-NCSC-155, ¶ 25 (citations omitted). The remainder of the finding is supported by Ms. Blaney's testimony about Mother's mental health diagnosis.

Similarly, Mother challenges Finding of Fact 16, that Mother failed to consistently participate in weekly therapy. Ms. Blaney's testimony indicates Mother made same-day cancellations for an appointment in December 2020 and January 2021, and she cancelled or failed to attend two appointments in February 2021. At the date of the termination hearing on 12 July 2021, Mother had not attended therapy, virtual or otherwise, since 19 April 2021, in part because she was sick with

COVID-19. Ms. Blaney also testified that Mother participated in 18 sessions total. This finding is supported by clear, cogent, and convincing evidence.

¶ 17 Finding of Fact 17, regarding the lack of parental education resources for Mother in her native language, is entirely supported by testimony from the DSS social worker. Mother contends this finding cannot support a willful failure to make reasonable progress because she was without adequate parenting classes and had no opportunity to learn. Yet, the record also reveals Mother's therapist, Ms. Blaney, attempted to address Mother's parenting needs in her individual therapy sessions.

¶ 18 Finding of Fact 18 is also supported by the evidence. Ms. Blaney testified Mother never disclosed or acknowledged that Jorge and Oscar had been sexually abused, despite their discussions about her sons' sexually inappropriate behaviors. Ms. Blaney testified acknowledging the abuse was "absolutely" important to Mother's treatment. Ms. Muse testified that before Mother went to Ms. Blaney for individual therapy, DSS engaged Sheryl Ewing with Family Support Network to evaluate Mother, and she determined the "Triple P" parenting program was not "intensive enough" for Mother. Ms. Muse further testified that during a supervised visitation in April 2021, Oscar pulled down his pants close to Jorge's face to show him his underwear while Mother was in the room. Mother did not notice because she was preoccupied with Angel, so Ms. Muse had to intervene. Ms. Muse attempted to educate Mother that those behaviors are indicators of child abuse, but Mother

"continuously denie[d] that anything happened to her children or that these issues are of concern."

¶ 19 Finally, Mother asserts, contrary to Finding of Fact 27, that she had a therapy appointment scheduled with a different therapist in April 2021. Ms. Blaney's testimony reveals Mother had scheduled an appointment with another provider at their office but had not yet "seen anyone else." Even if Mother had scheduled an appointment with another provider, she had not attended any therapy sessions in the months leading up to the termination hearing. There is clear and convincing evidence Mother's last therapy appointment was in April 2021.

*b. Visits with Children*

¶ 20 Next, Mother challenges several findings about her visits with her children while they were in DSS custody:

> 20. In the summer of 2020, visits between the children and [Mother] became increasingly problematic. [Mother] repeatedly reported to Ana Blaney that her visits with the boys went well and occurred without incident. She failed to share completely accurate information with Ms. Blaney, and [DSS] had to intervene. [Mother] frequently struggled to command any respect from the children, struggled with discipline and redirection and exhibited difficulty with supervising all three children at one time. On August 13, 2020, Social Worker Samantha Muse started contacting Ms. Blaney consistently to report issues in the visits so that Ms. Blaney could process with [Mother] during her sessions and work on techniques to improve visits. [Mother] appeared to understand the issues during her sessions with Ms. Blaney, however, her visits failed to

improve.

. . . .

32. [Mother] is offered weekly supervised visits with the children. A Spanish interpreter is provided as [Mother] speaks Spanish, and the children have lost their ability to speak Spanish and only speak English. Initially, [Mother] was consistent with visits. Since the primary plan changed to adoption in February 2021, she has not been consistent with visits and does not participate weekly. During most visits, she spends the majority of her time with [Angel], while [Jorge] and [Oscar] play amongst themselves. She is not able to appropriately supervise all three children in the visitation room. Her attempts at discipline are not effective as the children ignore her. The social worker frequently has to intervene in visits to ensure safety and to discourage inappropriate behavior from the children.

33. During a visit in April 2021, Social Worker Samantha Muse had to intervene during a visit when [Oscar] pulled down his pants to show [Jorge] his underwear. [Mother] did not see [Oscar] pull his pants down in front of [Jorge]'s face, and she failed to react until Ms. Muse entered the visitation room. She verbally addressed [Oscar] to instruct him to stop, however, she did not follow through to ensure that he stopped. When Ms. Muse tried to address the issue with [Mother] afterwards, [Mother] refused to address the issue and continually denied her children have suffered any sexual abuse.

34. [Mother] does have basic parenting skills such as diaper changing and bottle feeding. When asked to stop bringing sugary drinks and food to the visits because it adversely affects the boys' behaviors and contributes to [Oscar]'s significant tooth decay, she failed to grasp the issue and continued providing the same snacks.

35. [Jorge], [Oscar], and [Angel] are very rough with one another during play and need to be supervised well to

avoid one harming another. They do not take direction from their mother when she verbally redirects them. The social worker intervenes frequently to redirect the children, and they are responsive to her instruction.

36. [Mother] cannot effectively and safely parent the Juveniles without direct and consistent intervention by the Department. [Jorge] and [Oscar] have been in foster care three times. [Angel] has been involved in an ongoing treatment case and one foster care case in his life. [DSS] has been a constant in their lives for many years and has provided services outside of foster care involvement through investigations and ongoing treatment services.

¶ 21 Mother concedes, as the trial court determined in Finding of Fact 20, that her visits with the children were "not going well in the summer of 2020" and the "DSS court report from the time corroborates this." The DSS social worker's testimony supports the trial court's remaining findings of fact about visitation. Regarding Oscar's dental health, Ms. Muse testified, during one visit, Mother ignored her instruction not to give Oscar a Coca-Cola at 8:30 a.m. because he previously had significant tooth decay. Ms. Muse detailed the visitation in which Oscar pulled his pants down in Jorge's face to show him his underwear. She further testified Mother had "extreme difficulty in visitations" and that she had to intervene "due to the children playing very rough with one another and not taking direction from Mom. Each visitation that the children have with [Mother], I do end up entering the visitation room[.]"

¶ 22 The challenged findings are supported by clear and convincing evidence and

support the trial court's determination that Mother did not make willful progress on her case plan while the children were in DSS custody.

### c. *Mother's Housing*

¶ 23     Mother asserts Finding of Fact 31 cannot serve as a basis for termination by willful failure to make progress. That finding provides:

> 31. [Mother] has maintained a home consistently throughout this case. She currently resides in a two-bedroom, one-bathroom home in Wilmington, North Carolina. Her home is always clean and tidy. She does not have adequate sleeping space for the children to have their own private space. Separate and distinct space is needed for each child to ensure appropriate boundaries given the history of sexual contact between the children. [Mother] has no realistic plan of how she would provide appropriate space and supervision in the home to prevent further sexual contact between the children.

¶ 24     Our General Assembly has made clear "[n]o parental rights . . . shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty." § 7B-1111(a)(2). We recognize the immense challenge Mother faces in securing appropriate housing for her three children as a single mother even under ideal circumstances. Although Mother faced financial difficulties, the trial court's order reveals poverty did not serve as the "sole reason" for the termination of her parental rights. *Id.; see also In re N.K.*, 375 N.C. 805, 816, 851 S.E.2d 321, 330 (2020) ("[A] careful analysis of the record shows that respondent-mother's inability to care for [her child] did not stem solely from her poverty."). The

trial court's determination that Mother failed to make willful progress on her case plan "resulted from a combination of factors," *N.K.*, 375 N.C. at 816, 851 S.E.2d at 330, including Mother's failure to properly discipline her children, her inability to manage their sexual behaviors, and her inconsistent participation in therapy. Thus, we leave the trial court's finding undisturbed.

### d. Drug and Alcohol Screens

¶ 25        Mother concedes Finding of Fact 14 "is supported by the [social worker's] testimony," but she claims the trial court's finding "omits important information" that she provided negative drug screens on 6 November and 4 December 2020. The trial court found:

> 14. On May 19, 2020, June 10, 2020, and June 17, 2020, [Mother] failed to submit to random drug screens as requested by the Department. On November 5, 2020, she failed to show for a random drug screen as requested, but she did offer to go on November 6, 2020 if she could arrange transportation. No screen was requested on November 6, 2020 as it would not be random. She failed to submit to a random drug screen as requested on December 3, 2020, but she offered to submit on December 4, 2020 if she could arrange transportation. No screen was requested on December 4, 2020 as it would not be random. On May 21, 2021, [Mother] failed to submit to a screen as requested. [Mother] did submit to some random drug screens as requested, and the results were always negative. She submitted to a urine and hair drug screen in June 2021 with negative results. Social Worker Samantha Muse never witnessed [Mother] under the influence and never saw evidence of alcohol use in the home. Additionally, Ana Blaney never reported any concerns about [Mother]

relapsing.

The "trial court need not make a finding as to every fact which arises from the evidence; rather, the [trial] court need only find those facts which are material to the resolution of the dispute." *In re M.S.E.*, 378 N.C. 40, 2021-NCSC-76, ¶ 31 (quotation marks and citation omitted). The trial court made material findings necessary to its termination decision—that Mother always tested negative on drug screens she submitted, that she failed to submit some screens, and that neither Ms. Muse nor Ms. Blaney had concerns about her sobriety. Despite Mother's contention, the trial court was not required to further detail the results of every rescheduled test. *See id.*

   e.  *Children's Sexually Inappropriate Behavior*

Mother argues the following findings about her children's sexually inappropriate behavior are also unsupported by clear, cogent, and convincing evidence:

> 21. Several years ago, a man named Jonathan touched [Oscar]'s privates over his clothes. [Mother] rented a room in the same house where Jonathan resided. [Mother] reported that Jonathan was just curious about little children, but she told him to stop [sic] [Oscar]. She failed to report the incident to law enforcement or [DSS].

> 22. Subsequently, Jonathan touched [Oscar]'s privates again, and it was witnessed by Jonathan's wife. Again, [Mother] failed to report to law enforcement or [DSS]. She threatened to sue Jonathan if he touched her child again. Prior to this date, she has consistently maintained that none of her children were sexually abused, and her testimony in this hearing is the first time she has

admitted any child sexual abuse. She was unable or unwilling to provide further details about Jonathan.

23. [Mother] has always been reluctant to discuss the allegations of child sexual abuse of [Jorge] and [Oscar]. Sexual abuse symptoms were exhibited in the last foster care case when [Jorge] sexually perpetrated against [Oscar]. [Mother] was aware of the issues and did not ensure adequate supervision which is what ultimately led to the children's removal in November 2019. It has been difficult to address the sexual trauma the boys suffered because [Mother] consistently denies any inappropriate contact between adults and the Juveniles and any inappropriate contact between the Juveniles other than the incident in November 2019. [Ms.] Blaney spent many sessions addressing [Mother's] cultural beliefs about sexuality, discipline and parenting. [Mother] never admitted to Ms. Blaney that the boys had been sexually abused. Her failure to acknowledge the abuse prevents her ability to effectuate positive change in parenting techniques. Safety cannot be ensured when the proposed protective parent does not believe child sexual abuse occurred.

¶ 28        Specifically, Mother argues these findings "indicate [Mother] never mentioned a man attempting to perpetrate on her children before [the hearing] or [Mother]'s unwillingness to discuss it[.]" She misinterprets the trial court's findings. It is undisputed that the children's sexual behavior was reported to DSS as early as December 2017 and that Mother disclosed to DSS in early 2018 that a male roommate had touched Oscar's and Jorge's penises. Instead, the trial court determined that, prior to the termination hearing, Mother "consistently maintained that none of her children were sexually abused, and her testimony in this hearing is the first time she

has admitted any child sexual abuse." Mother does not otherwise challenge the substance of these findings and all three findings are supported by the collective testimony of Ms. Blaney, Ms. Muse, and Mother. As we have discussed, Mother's failure to acknowledge her children's sexual abuse supports the trial court's conclusion that Mother failed to make reasonable progress in the therapy and parenting components of her case plan.

### f. *Reasonable Progress*

¶ 29 Our Supreme Court has not clearly defined what constitutes "reasonable progress," but, for purposes of ceasing reunification efforts, it has held it to be something more than "some progress." *In re J.H.*, 373 N.C. 264, 268-70, 837 S.E.2d 847, 850-52 (2020). "A [parent]'s prolonged inability to improve her situation*, despite some efforts in that direction*, will support a finding of willfulness regardless of her good intentions, and will support a finding of lack of progress sufficient to warrant termination of parental rights under [Sub]section 7B-1111(a)(2)." *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (cleaned up) (emphasis added).

¶ 30 Disregarding any finding made in error, *see R.G.L.*, ¶ 25, we hold there is clear, cogent, and convincing evidence to support the findings Mother challenges. *See Z.J.W.*, ¶ 14. Mother has made some effort to improve her situation and has made some progress on her case plan. Yet, in the months immediately before the termination hearing, *A.C.F.*, 176 N.C. App. at 528, 626 S.E.2d at 735, Mother

inconsistently engaged in individual therapy, failed to acknowledge her children's sexual abuse, demonstrated little growth in effectively disciplining her children, and had no plan to maintain safe boundaries at home to manage her children's inappropriate sexual behavior. We affirm the trial court's conclusion that Mother willfully failed to make reasonable progress, given the circumstances, to correct the conditions which led to her children's removal to warrant termination of her parental rights under Subsection 7B-1111(a)(2).

### 2. *The trial court appropriately concluded there was a likelihood of future neglect of the children.*

¶ 31      Mother contends the trial court erred in concluding there was a likelihood of future neglect of the children because she "substantially complied with her case plan, remedied removal conditions within her control, and DSS did not present clear and convincing evidence of a likelihood of future neglect." We are unpersuaded.

¶ 32      The likelihood of future neglect may be based on a parent's history of neglect and willful failure to complete a case plan. *In re M.J.S.M.*, 257 N.C. App. 633, 637-39, 810 S.E.2d 370, 373-74 (2018). In terminations based on neglect, pursuant to Subsection 7B-1111(a)(1), where the children have been removed from the parent's custody, the trial court must consider any evidence of changed conditions since the prior neglect and the probability of a repetition of neglect. *In re C.N.*, 266 N.C. App. 463, 466-67, 831 S.E.2d 878, 881 (2019). "[P]arental rights may nonetheless be

terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to her parents." *In re Reyes*, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000) (citation omitted). "Failure to make progress must be viewed by the actions and attempts of parents within their abilities and means, considering their resources or lack thereof and the priority for their securing their basic necessities of life." *C.N.*, 266 N.C. App. at 469, 831 S.E.2d at 882 (citation omitted).

¶ 33        Here, the trial court concluded "there is a high probability that the neglect will continue in the foreseeable future." After the children were removed from Mother's care and adjudicated dependent and/or neglected on three separate occasions, at the time of the termination of parental rights hearing, Mother: (1) participated in therapy inconsistently; (2) was unable to appropriately discipline her children; and (3) failed to develop and implement a plan to properly supervise her children in her home given their inappropriate sexual behavior. Following our caselaw and our holding above, Mother's willful failure to complete her case plan supports the trial court's conclusion of a likelihood of future neglect. *See M.J.S.M.*, 257 N.C. App. at 637-39, 810 S.E.2d at 373-74. We hold the trial court did not err in concluding there was a "probability of repetition of neglect if the [children] were returned to [Mother]." *Reyes*, 136 N.C. App. at 815, 526 S.E.2d at 501 (citation omitted).

### 3. *The trial court did not abuse its discretion in concluding termination of Mother's parental rights was in the best interest of the children.*

¶ 34      Lastly, Mother argues the trial court abused its discretion in concluding termination was in the best interest of the children because it failed to make relevant findings. In particular, Mother contends the trial court was required to make findings about the lack of Spanish-language services available to her and her children as well as the termination's impact on the children's loss of culture. The trial court did not abuse its discretion.

¶ 35      We review a trial court's decision to terminate parental rights for abuse of discretion. *In re Z.L.W.*, 372 N.C. 432, 435, 831 S.E.2d 62, 64 (2019) (citations omitted).

¶ 36      After adjudicating at least one ground for terminating a parent's rights, the trial court

> *shall consider the following criteria and make written findings regarding the following that are relevant*:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) *Any relevant consideration.*

N.C. Gen. Stat. § 7B-1110(a)(1)-(6) (2021) (emphasis added). While a trial court must *consider* each factor in Subsection 7B-1110(a), the "statute does not, however, explicitly require written findings as to each factor." *In re A.U.D.*, 373 N.C. 3, 10, 832 S.E.2d 698, 702-03 (2019).

¶ 37 Assuming language and culture are included in the catchall "any relevant consideration" of Subsection 7B-1110(a)(6), we are satisfied the trial court considered these factors in concluding terminating Mother's parental rights was in the best interest of the children. In fact, the trial court made written findings about the language and cultural challenges: (1) "[Oscar] is frequently frustrated by the language barrier and his inability to easily communicate with his mother;" (2) DSS conducted a home study with a Spanish-speaking family friend in hopes of placing the children with them; and (3) "[Dr.] Blaney provided parenting education for [Mother] to allow for one-on-one instruction in Spanish."

¶ 38 Mother compares this case to *In re A.H.,* No. COA15-1177, 2016 WL 2865063, at *3 (N.C. Ct. App. May 17, 2016) (unpublished), in which this Court remanded the trial court's best interest decision for additional findings about how the children's placement with their father, who had been recently deported to Mexico, would affect their welfare because they did not know the language or culture. That case is factually inapposite and not binding on our decision today. *See* N.C. R. App. P. 30(e)

(2022) ("An unpublished decision of the North Carolina Court of Appeals does not constitute controlling legal authority.").

¶ 39    Mother has failed to demonstrate the trial court abused its discretion in its best interest determination.

## III.    CONCLUSION

¶ 40    Based on the foregoing reasons, we affirm the order of the trial court.

AFFIRMED.

Judges ZACHARY and JACKSON concur.