An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-651

Filed 3 June 2026

Iredell County, No. 14JT000234-480

IN THE MATTER OF: A.M.P.

Appeals by Respondent-Mother and Respondent-Father from order entered 2 April 2025 by Judge Thomas R. Young in Iredell County District Court. Heard in the Court of Appeals 28 January 2026.

> *Jack T. Brock II, PLLC, by Jack T. Brock II, for Respondent-Appellant-Mother.*
>
> *Parent Defender Annick Lenoir-Peek and Sr. Assistant Parent Defender J. Lee Gilliam for Respondent-Appellant-Father.*
>
> *Lauren Vaughan, for Petitioner-Appellee Iredell County Department of Social Services.*
>
> *James N. Freeman, Jr., for the Appellee Guardian ad Litem.*

CARPENTER, Judge.

Respondent-Mother and Respondent-Father (collectively, "Respondent-Parents") appeal from the trial court's order terminating their parental rights to their juvenile, April.[1] On appeal, Respondent-Mother argues that the trial court: (1)

---

[1] A pseudonym is used to protect the juvenile's identity. *See* N.C. R. App. P. 42(b) (2025).

abused its discretion in denying her motion to continue the termination hearing; (2) erred in concluding that grounds existed to terminate her parental rights; and (3) abused its discretion in determining termination was in April's best interests. Respondent-Father challenges the trial court's adjudication that grounds existed to terminate his parental rights. For the reasons discussed below, we affirm.

## I.     Factual & Procedural Background

April was born to Respondent-Parents in November 2014. At birth, April tested positive for controlled substances, prompting an investigation by the Iredell County Department of Social Services ("DSS"). On 25 November 2014, DSS filed a juvenile petition alleging that April was abused and neglected. On 3 February 2015, the trial court adjudicated April as abused and neglected and placed her in nonsecure custody. In October 2015, the trial court returned April to Respondent-Parents' custody.

In May 2021, DSS investigated allegations of substance abuse in the home and April's inconsistent school attendance. On 17 November 2021, DSS filed a new petition alleging April was a neglected juvenile. On 15 March 2022, the trial court entered an order adjudicating April as neglected. Without modifying custody, the trial court ordered Respondent-Parents to enter case plans with DSS. Respondent-Parents' case plans required them to: complete a comprehensive clinical assessment,

submit to drug screens, refrain from criminal activity, ensure April attended school regularly, and maintain stable income and housing.

On 5 April 2022, DSS filed a motion for review, alleging Respondent-Parents had failed to comply with the trial court's 15 March 2022 order in all respects. DSS alleged that Respondent-Parents' housing was unstable and that Respondent-Father stabbed and seriously injured Respondent-Mother in April's presence.

On 12 April 2022, the trial court held a permanency planning hearing and placed April in nonsecure custody. The Guardian ad Litem ("GAL") prepared a report, which the trial court received into evidence. The GAL reported, in relevant part: Respondent-Parents and April were living in a one-bed motel room; Respondent-Mother reported multiple instances of domestic violence in the home; April had asthma and other medical conditions, but Respondent-Parents had not taken her for treatment or picked up her medications; and April had missed sixty-two days of school that school year. In its order entered 4 May 2022, the trial court incorporated the GAL report in its findings and found that conditions leading to April's removal included domestic violence, April's unaddressed medical needs and truancy, housing instability, and Respondent-Parents' failure to comply with their case plans. After the hearing, DSS placed April in a foster home.

After two years of regular review hearings and minimal progress, DSS filed a petition to terminate Respondent-Parents' parental rights on 3 July 2024, alleging neglect, willful failure to make reasonable progress, and Respondent-Mother's willful

failure to pay a reasonable portion of April's care. DSS alleged that Respondent-Parents failed to engage in substance abuse treatment, failed to engage in domestic violence services, accrued criminal charges, and failed to maintain stable housing and employment. The termination hearing commenced on 29 January 2025, with Respondent-Parents present and represented by counsel. After concluding for the day, the trial court continued the termination hearing for nearly a month until 26 February 2025.

When the hearing resumed, the trial court granted Respondent-Mother's request for continuance based on a representation that she was hospitalized. At the next hearing date on 26 March 2025, Respondent-Mother failed to appear, and her counsel requested a second continuance. Respondent-Father stated Respondent-Mother was again hospitalized, but Respondent-Mother's counsel provided no evidence of either alleged hospitalization. The trial court denied Respondent-Mother's second motion to continue and proceeded with the termination hearing, where the evidence tended to show the following.

After April's removal in 2022, Respondent-Mother's compliance with her case plan was inconsistent. Respondent-Mother continued to test positive for controlled substances, failed to complete recommended treatment, failed to maintain stable housing or employment, incurred additional criminal charges, and minimized or denied any history of domestic violence.

Respondent-Father was incarcerated and subject to a no-contact order with April throughout her time in nonsecure custody. DSS visited Respondent-Father in prison and attempted to engage him in a case plan. Respondent-Father refused, stating he did not believe he had anything to work on. Respondent-Father completed some anger management and parenting classes without informing DSS.

Testimony during the dispositional phase of the hearing showed that April's relationship with Respondent-Mother had diminished. Respondent-Mother often slept during her visits with April, leaving April to watch videos. Because of the no-contact order, April had no bond with Respondent-Father. While in foster care, April made academic, behavioral, and emotional progress and attended school regularly. April's social worker testified that April visited with a prospective adoptive family that had an interest in adopting April.

On 2 April 2025, the trial court entered an order terminating Respondent-Parents' parental rights. In its order, the trial court found that Respondent-Parents had willfully failed to make reasonable progress to correct the conditions that led to April's removal. Regarding Respondent-Mother, the trial court found that Respondent-Mother never fully participated in substance abuse treatment, did not improve her parenting skills, actively planned to reunite with Respondent-Father despite the history of domestic violence in the home, and continued to accrue criminal charges.

Regarding Respondent-Father, the trial court found that Respondent-Father refused to enter a case plan with DSS, he was unable to provide care for April, and he had no remorse for attacking Respondent-Mother and intended to reunify with her, despite their history of domestic violence. At disposition, the trial court concluded that termination of Respondent-Parents' parental rights was in April's best interests. Respondent-Mother and Respondent-Father filed timely notices of appeal.

## II.     Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(2) and 7B-1001(a)(7) (2025).

## III.     Issues

On appeal, Respondent-Mother argues the trial court: (1) abused its discretion in denying her second motion to continue; (2) erred in concluding that grounds existed to terminate her parental rights; and (3) abused its discretion in determining that termination was in April's best interests. Respondent-Father challenges the trial court's conclusion that grounds existed to terminate his parental rights without factoring in the limitations of his incarceration.

## IV.     Analysis

### A. Respondent-Mother

#### 1. Motion to Continue

Respondent-Mother first argues that the trial court abused its discretion in denying her second motion to continue the termination hearing. Specifically,

Respondent-Mother contends that the trial court should have verified her hospitalization before denying the continuance. We disagree.

"Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." *In re A.L.S.,* 374 N.C. 515, 516–17, 843 S.E.2d 89, 91 (2020) (internal quotations and citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 517, 843 S.E.2d at 91 (internal quotations and citations omitted).

A trial court may continue a termination hearing for "good cause shown" for up to ninety days from the date of the termination petition. N.C. Gen. Stat. § 7B-1109(d) (2025). A continuance extending beyond ninety days "shall be granted only in extraordinary circumstances when necessary for the proper administration of justice[.]" *Id.* Continuances are disfavored, and "the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice." *In re J.E.,* 377 N.C. 285, 291, 856 S.E.2d 818, 823 (2021) (internal quotations and citation omitted).

Here, Respondent-Mother does not demonstrate that good cause or "extraordinary circumstances" warranted a second continuance. *See* N.C. Gen. Stat. § 7B-1109(d). DSS filed its termination petition on 3 July 2024, and the hearing commenced on 29 January 2025—well after ninety days. *See id.* Notably, the trial

court granted a continuance in February 2025 based on an uncorroborated representation that Respondent-Mother was hospitalized. Further, Respondent-Mother's counsel had no communication from Respondent-Mother, offered no verification of her alleged hospitalization, and made no evidentiary proffer of good cause at the time of her motion, during the hearing, or through a post-judgment motion. Thus, Respondent-Mother had not demonstrated extraordinary circumstances justifying a second continuance. *See id.* Accordingly, the trial court did not abuse its discretion in denying Respondent-Mother's second motion to continue. *See In re A.L.S.,* 374 N.C. at 517, 843 S.E.2d at 91.

### 2. Adjudication

Respondent-Mother next argues the trial court erred in concluding that grounds existed to terminate her parental rights under section 7B-1111(a)(2). Specifically, she contends that the trial court improperly relied on judicially-noticed facts that were uncorroborated and unsupported by clear, cogent, and convincing evidence. Because unchallenged findings of fact independently support the trial court's conclusion, this argument is without merit.

"We review an adjudication order to determine whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusions of law." *In re M.B.,* 382 N.C. 82, 85, 876 S.E.2d 260, 264 (2022) (internal quotations and citations omitted). "Unchallenged findings of fact are conclusive on appeal and binding on this Court." *In re S.I.D.-M.*, 288 N.C. App. 154, 162, 885 S.E.2d

344, 350 (2023) (quoting *In re C.M.P.*, 254 N.C. App. 647, 654, 803 S.E.2d 853, 858 (2017)). "The trial court's conclusions of law are reviewed *de novo*." *Id*. at 162, 885 S.E.2d at 350.

"Our Juvenile Code provides for a two-step process for termination of parental rights proceedings consisting of an adjudicatory stage and a dispositional stage." *In re M.B.*, 382 N.C. at 85, 876 S.E.2d at 264 (internal quotations and citations omitted). At the adjudicatory stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds for termination. *Id.* at 85, 876 S.E.2d at 264 (internal quotation and citation omitted). "However, an adjudication of any single ground for terminating a parent's rights under [section] 7B-1111(a) will suffice to support a termination order." *In re J.S.*, 374 N.C. 811, 814–15, 845 S.E.2d 66, 71 (2020) (internal citations omitted).

Parental rights may be terminated when "[t]he parent has willfully left the juvenile in foster care . . . for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2). Willfulness is established when "the parent had the ability to show reasonable progress, but was unwilling to make the effort." *In re M.B.*, 382 N.C. at 88, 876 S.E.2d at 266 (internal quotations and citations omitted). "While extremely limited progress is not reasonable progress, certainly perfection is not

required to reach the reasonable standard." *In re S.D.*, 243 N.C. App. 65, 73, 776 S.E.2d 862, 867 (2015) (cleaned up).

Here, Respondent-Mother failed to make reasonable progress in correcting the conditions that led to April's removal. *See* N.C. Gen. Stat. § 7B-1111(a)(2). The trial court removed April in 2022 based on April's unaddressed medical needs and truancy, Respondent-Parents' ongoing substance abuse and domestic violence, and housing instability. Nearly three years later, however, unchallenged findings tend to show that despite DSS intervention, Respondent-Mother: failed to maintain stable housing, remained largely uncommunicative with DSS, incurred drug-related charges, continued to test positive for controlled substances, failed to engage in inpatient substance-abuse treatment, and minimized or denied that domestic violence occurred.

These unchallenged findings conclusively show that Respondent-Mother had the ability to show reasonable progress, but she was unwilling to do so. *See In re M.B.*, 382 N.C. at 88, 876 S.E.2d at 266. Thus, the trial court properly concluded that Respondent-Mother had willfully failed to make reasonable progress to correct the conditions that led to April's removal. *See id.* at 88, 876 S.E.2d at 266. Because the existence of one ground is sufficient, we affirm the trial court's adjudication as to Respondent-Mother. *See In re J.S.*, 374 N.C. at 814–15, 845 S.E.2d at 71; N.C. Gen. Stat. § 7B-1111(a)(2).

### 3. Disposition

Respondent-Mother next argues that the trial court abused its discretion at disposition by concluding that termination was in April's best interests. She contends that the trial court overstated April's adoptability and minimized her bond with April. We disagree.

After the trial court adjudicates at least one ground for termination, we review its best interests determination under section 7B-1110(a) for abuse of discretion. *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019). During the dispositional phase of termination proceedings, the trial court:

> shall consider the following criteria and make written findings regarding the following that are relevant: (1) [t]he age of the juvenile[;] (2) [t]he likelihood of adoption of the juvenile[;] (3) [w]hether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile[;] (4) [t]he bond between the juvenile and the parent; (5) [t]he quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement[; and] (6) [a]ny relevant consideration.

*In re A.J.T.*, 374 N.C. 504, 508–09, 843 S.E.2d 192, 195 (2020) (citing N.C. Gen. Stat. § 7B-1110(a)).

"[T]he responsibility for weighing the relevant statutory criteria delineated in [section] 7B-1110(a) lies with the trial court, which 'is permitted to give greater weight to other factors,' rather than [the appellate court]." *In re I.N.C.*, 374 N.C. 542, 550, 843 S.E.2d 214, 220 (2020) (quoting *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d

62, 66 (2019)). The absence of a finalized adoptive placement "is not a bar to terminating parental rights." *In re A.J.T.*, 374 N.C. at 512, 843 S.E.2d at 197–98.

Here, Respondent-Mother's argument largely invites this Court to reweigh the evidence regarding the strength of her bond with April and the likelihood of April's adoption. *See In re I.N.C.*, 374 N.C. at 550, 843 S.E.2d at 220. As to adoptability, the trial court received testimony from April's social worker, who stated that DSS had located a foster family interested in adopting April. The social worker also testified that April had several conversations and a visit with the potential adoptive family, and April wanted to be adopted. Regarding the parent-child bond, the parenting coach testified that visits between Respondent-Mother and April would not go well, as Respondent-Mother often slept during visits while April watched a video. The parenting coach stated that April's bond with Respondent-Mother had "definitely diminished," and their bond was not "the parental bond that you would normally see."

This evidence supports the trial court's findings that April had spent close to a third of her life in foster care, her bond with Respondent-Mother had diminished, and she desired permanence through adoption. On this record, the trial court appropriately considered the relevant dispositional criteria. *See* N.C. Gen. Stat. § 7B-1110(a); *In re A.J.T.*, 374 N.C. at 504, 843 S.E.2d at 195. The trial court's conclusion that termination was in April's best interests was not arbitrary or unsupported by reason. *See In re A.L.S.*, 374 N.C. at 517, 843 S.E.2d at 91. Thus, the trial court did not abuse its discretion in determining that termination of Respondent-Mother's

parental rights was in April's best interests. *See In re E.H.P.*, 372 N.C. at 392, 831 S.E.2d at 52.

**B. Respondent-Father**

Respondent-Father argues the trial court erred in concluding that grounds existed to terminate his parental rights under section 7B-1111(a)(2) because he was incarcerated for much of the relevant period and lacked a meaningful opportunity to comply with his case plan. We disagree.

"A parent's incarceration may be relevant to the determination of whether parental rights should be terminated, but our precedents are quite clear—and remain in full force—that incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." *In re K.N.*, 373 N.C. 274, 282, 837 S.E.2d 861, 867 (2020) (internal quotations and citations omitted).

Here, the trial court's unchallenged findings demonstrate that, despite his incarceration, Respondent-Father had some ability to address the issues that led to April's removal, but he was unwilling to do so. *See In re M.B.*, 382 N.C. at 88, 876 S.E.2d at 266. For instance, DSS visited Respondent-Father in prison and presented him with a case plan addressing substance abuse, domestic violence, and mental health. Respondent-Father refused to sign the case plan, stating he had nothing to work on. The trial court also found Respondent-Father had refused substance-abuse treatment, declined to complete domestic-violence and mental-health assessments, and failed to communicate with April's social worker regarding her well-being. Even

assuming Respondent-Father timely informed DSS that he completed some parenting and anger-management classes while incarcerated, these limited efforts fell short of reasonably addressing the conditions that led to April's removal. *See In re S.D.*, 243 N.C. App. at 73, 776 S.E.2d at 867. Thus, unchallenged findings support the trial court's conclusion that Respondent-Father willfully failed to make reasonable progress to correct the conditions that led to April's removal. *See* N.C. Gen. Stat. § 7B-1111(a)(2); *In re M.B.,* 382 N.C. at 85, 876 S.E.2d at 264.

## V.   Conclusion

The trial court did not abuse its discretion in denying Respondent-Mother's second motion to continue the termination hearing. Further, the trial court's unchallenged findings of fact support its conclusion that Respondent-Parents willfully failed to make reasonable progress in addressing the conditions that led to April's removal. Finally, the trial court did not abuse its discretion in concluding that termination of Respondent-Mother's parental rights was in April's best interests. Accordingly, we affirm the trial court's order terminating Respondent-Parents' parental rights.

AFFIRMED.

Chief Judge DILLON and Judge TYSON concur.

Report per Rule 30(e).